YOUNG, J.
We granted leave to appeal in these cases and ordered that they be argued and submitted together to clarify the elements of operating a motor vehicle while under the influence of liquor and causing death (“OUIL causing death”), MCL 257.625(4). In addressing this issue, we revisit our decision in People v *422 Lardie,[1] which held, inter alia, that to convict a defendant of OUIL causing death, the prosecution must prove “that the defendant’s intoxicated driving was a substantial cause of the victim’s death.”[2]
We conclude that the Lardie Court erred in holding that the defendant’s “intoxicated driving”[3] must be a substantial cause of the victim’s death. The plain text of § 625(4) does not require that the prosecution prove the defendant’s intoxicated state affected his or her operation of the motor vehicle. Indeed, § 625(4) requires no causal link at all between the defendant’s intoxication and the victim’s death. The statute requires that the defendant’s operation of the motor vehicle, not the defendant’s intoxicated manner of driving, must cause the victim’s death. The defendant’s status as “intoxicated” is a separate element of the offense of OUIL causing death. It specifies the class of persons subject to liability under § 625(4): intoxicated drivers.
Quite simply, by enacting § 625(4), the Legislature intended to punish “operating while intoxicated,” not “operating in an intoxicated manner.” Therefore, to the extent that Lardie held that the defendant’s intoxicated driving must be a substantial cause of the victim’s death, it is overruled.[4]
Accordingly, in People v Schaefer, we vacate the judgment of the Court of Appeals and remand the case *423 to the Court of Appeals to address defendant’s remaining argument that the trial court erred so as to require reversal in making repeated references to defendant’s stipulation as to his 0.16 blood-alcohol level during the jury instructions. In People v Large, we reverse the judgment of the Court of Appeals and remand the case to the district court for reconsideration of whether to bind defendant over on the charge of OUIL causing death in light of the principles set forth in this opinion.
I. FACTS AND PROCEDURAL HISTORY
A. PEOPLE v SCHAEFER
In January 2002, defendant was driving on Interstate-75 in the city of Lincoln Park with his friend as a passenger in the vehicle. Defendant admitted that he consumed three beers before getting behind the wheel.[5] According to several eyewitnesses, defendant was tailgating various cars and driving erratically.
While on the freeway, defendant’s passenger abruptly told him that they had reached their freeway exit. Defendant swerved to exit the freeway, hit the curb, and lost control of the car. The car rolled over, killing the passenger. Defendant stipulated at trial that he had a 0.16 blood-alcohol level almost three hours after the accident.[6]
Defendant was charged with OUIL causing death[7] *424 and manslaughter with a motor vehicle.[8] At trial, a defense expert witness testified that the exit ramp was safe for speeds up to thirty miles per hour, but dangerous at any greater speed. He stated that he would have expected numerous accidents, including rollovers, during the thirty-six years that the ramp was in existence and that he was surprised to learn that there had been no other rollover accidents in over twenty years.
In instructing the jury, instead of reading the standard instruction for OUIL causing death, CJI2d 15.11,[9] the trial court read the text of the OUIL causing death statute. When the jury asked for additional instructions during deliberations, the trial court said all it could do was tell them what the statute said. Thus, the court again read the statute to the jury. The jury convicted defendant of OUIL causing death and negligent homi *425 tide.[10] Defendant was sentenced to concurrent prison terms of fifty months to fifteen years for OUIL causing death and one to two years for negligent homicide.
On appeal, the Court of Appeals affirmed defendant’s negligent homicide conviction, but reversed his conviction of OUIL causing death.[11] In a two-to-one decision, the Court of Appeals held that the trial court erred in instructing the jury because it did not inform the jury that defendant’s intoxicated driving must be a “substantial cause” of the victim’s death, as required by Lardie.[12] The dissent concluded that the trial court properly instructed the jury on the causation element of OUIL causing death by reading the statute to the jury. We granted the prosecutor’s application for leave to appeal and ordered that this case be argued and submitted with People v Large.[13]
B. PEOPLE V LARGE
In July 2003, while driving on a road in Jackson County, defendant struck and killed an eleven-year-old girl who was riding her bicycle in the late afternoon. The girl emerged onto the road after descending from an elevated driveway, the street view of which was partially obstructed by vegetation. The bicycle that she was riding did not have any brakes. Defendant was driving approximately five miles an hour over the posted speed limit of fifty-five miles per hour. Despite swerving in an attempt to avoid hitting the girl, the *426 two collided. At the time of the accident, defendant had a 0.10 blood-alcohol level.
Defendant was charged with manslaughter with a motor vehicle,[14] OUIL causing death,[15] OUIL (second offense),[16] and violation of license restrictions.[17] At defendant’s preliminary examination, the prosecution called a sheriffs deputy who testified as an expert witness in accident reconstruction. The deputy testified that the accident was unavoidable, opining that the collision still would have occurred had defendant been sober and driving the speed limit. According to the deputy, a sober driver would have required at least IV2 seconds to notice the girl and attempt to avoid hitting her. On the basis of his investigation, the deputy concluded that the girl emerged onto the road, and the impact occurred, all within less than one second.
The district court bound defendant over on all counts except OUIL causing death. On appeal to the circuit court, the court refused to reinstate the charge of OUIL causing death.[18] The prosecution then appealed to the Court of Appeals, which affirmed the circuit court.[19] Relying on Lardie, the Court of Appeals held that “[t]he prosecution failed to present sufficient evidence to justify a finding that defendant’s intoxicated driving was a substantial cause of the victim’s death____”[20] In *427 refusing to entertain the prosecutor’s argument that Lardie was wrongly decided, the Court of Appeals stated that “ ‘[a] decision of the Supreme Court is binding upon this Court until the Supreme Court overrules itself.’ Therefore, we may not revisit the holding of Lardie.”[21] We granted the prosecutor’s application for leave to appeal and ordered that this case be argued and submitted with People v Schaefer[22]
II. STANDARD OF REVIEW
Statutory interpretation is a question of law that is reviewed by this Court de novo.[23] Similarly, jury instructions that involve questions of law are also reviewed de novo.[24] In reviewing a district court’s decision to bind over a defendant, the lower court’s determination regarding the sufficiency of the evidence is reviewed for an abuse of discretion, but the lower court’s rulings based on questions of law are reviewed de novo.[25]
III. ANALYSIS
A. MCL 257.625(4)
Our Legislature first enacted the “OUIL causing death” statute as part of 1991 PA 98 in an attempt to increase the criminal penalties associated with driving while intoxicated.[26] The Legislature evidently believed *428 that sentences resulting from involuntary manslaughter and negligent homicide convictions inadequately deterred intoxicated drivers from getting behind the wheel.[27] Thus, to address this concern, the Legislature enacted the OUIL causing death statute, which provides more severe penalties, with the apparent expectation that these heightened penalties would deter intoxicated individuals from driving.
Our OUIL causing death statute, MCL 257.625(4), provides:
A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1) [under the influence of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance, or having an unlawful body alcohol content], (3) [visibly impaired by the consumption of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance], or (8) [any body content of a schedule 1 controlled substance] and by the operation of that motor vehicle causes the death of another person is guilty of a crime as follows:
(a)... [A] felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. [28]
B. PEOPLE v LARDIE
In People v Lardie, this Court was presented with a due process challenge to the OUIL causing death statute.[29] The defendants in the two consolidated cases in *429 Lardie alleged that § 625(4) imposed criminal liability without requiring a culpable mental state. In rejecting the defendants’ due process arguments, this Court held that OUIL causing death is a general intent crime and that “the culpable act that the Legislature wishes to prevent is the one in which a person becomes intoxicated and then decides to drive.”[30] We further held that “there is no requirement [under § 625(4)] that the people prove gross negligence or negligence” because “the Legislature essentially has presumed that driving while intoxicated is gross negligence as a matter of law.”[31]
This Court then proceeded to examine the causation element of the OUIL causing death offense, stating:
The Legislature passed [§ 625(4)] in order to reduce the number of alcohol-related traffic fatalities. The Legislature sought to deter drivers who are “willing to risk current penalties” from drinking and driving. In seeking to reduce fatalities by deterring drunken driving, the statute must have been designed to punish drivers when their drunken driving caused another’s death. Otherwise, the statute would impose a penalty on a driver even when his wrongful decision to drive while intoxicated had no bearing on the death that resulted. Such an interpretation of the statute would produce an absurd result by divorcing the defendant’s fault from the resulting injury. We seek to avoid such an interpretation.[32]
Thus, relying on policy justifications and its belief that a contrary construction would lead to an “absurd re- *430 suit,” the Lardie Court held that “in proving causation, the people must establish that the particular defendant’s decision to drive while intoxicated produced a change in that driver’s operation of the vehicle that caused the death of the victim.”[33] According to the Lardie Court, “[i]t is the change that such intoxication produces, and whether it caused the death, which is the focus of [the causation] element of the crime.”[34]
The Lardie Court summarized the three distinct elements the prosecution must prove in securing a conviction for OUIL causing death: .
(1) [That] the defendant was operating his motor vehicle while he was intoxicated, (2) that he voluntarily decided to drive knowing that he had consumed alcohol and might be intoxicated, and (3) that the defendant’s intoxicated driving was a substantial cause of the victim’s death.[35]
C. PRINCIPLES OF STATUTORY INTERPRETATION
When interpreting a statute, it is the court’s duty to give effect to the intent of the Legislature as expressed in the actual language used in the statute.[36] It is the role of the judiciary to interpret, not write, the law.[37] If the statutory language is clear and unambiguous, the statute is enforced as written.[38] Judicial construction is neither necessary nor permitted because it is presumed *431 that the Legislature intended the clear meaning it expressed.[39]
D. THE CAUSATION ELEMENT OF § 625(4)
The plain text of § 625(4) requires no causal link between the defendant’s intoxication and the victim’s death.[40] Section 625(4) provides, “A person, whether licensed or not, who operates a motor vehicle [while intoxicated] and by the operation of that motor vehicle causes the death of another person is guilty of a crime . . . .”[41] Accordingly, it is the defendant’s operation of the motor vehicle that must cause the victim’s death, not the defendant’s “intoxication.” While a defendant’s status as “intoxicated” is certainly an element of the offense of OUIL causing death, it is not a component of the causation element of the offense. Justice WEAVER succinctly stated this point in her concurrence in Lardie:
The plain language of the statute clearly indicates that the Legislature intended causation to turn on the fact that the defendant operated the vehicle while intoxicated, rather than the changed manner in which, or how, the defendant operated the vehicle while intoxicated.[42]
The Lardie Court’s reliance on policy considerations in construing § 625(4) was misplaced. It is true that the *432 cardinal rule of statutory interpretation is to give effect to the intent of the Legislature.[43] However, the Legislature’s intent must be ascertained from the actual text of the statute, not from extra-textual judicial divinations of “what the Legislature really meant.”[44] As we stated in Lansing Mayor, supra, “rather than engaging in legislative mind-reading to discern [legislative intent], we believe that the best measure of the Legislature’s intent is simply the words that it has chosen to enact into law.”[45]
The Lardie Court also erred in assuming that judicial adherence to and application of the actual text of § 625(4) “would produce an absurd result.” The result that the Court in Lardie viewed as “absurd”-imposing criminal liability under § 625(4) when a victim’s death is caused by a defendant’s operation of the vehicle rather than the defendant’s intoxicated operation-reflects a policy choice adopted by a majority of the Legislature. A court is not free to cast aside a specific policy choice adopted on behalf of the people of the state by their elected representatives in the Legislature simply because the court would prefer a different policy choice. To do so would be to empower the least politically accountable branch of government with unbridled policymaking power. Such a model of government was not envisioned by the people of Michigan in ratifying our Constitution, and modifying our structure of government by judicial fiat will not be endorsed by this Court.
*433 Instead, we must construe the causation element of § 625(4) according to the actual text of the statute. Section 625(4) plainly requires that the victim’s death be caused by the defendant’s operation of the vehicle, not the defendant’s intoxicated operation. Thus, the manner in which the defendant’s intoxication affected his or her operation of the vehicle is unrelated to the causation element of the crime. The defendant’s status as “intoxicated” is a separate element of the offense used to identify the class of persons subject to liability under § 625(4).[46]
Accordingly, we overrule Lardie only to the extent it held that the prosecution must prove “that the defendant’s intoxicated driving was a substantial cause of the *434 victim’s death.”[47] We hold that the prosecution, in proving OUIL causing death, must establish beyond a reasonable doubt that (1) the defendant was operating his or her motor vehicle in violation of MCL 257.625(1), (3), or (8); (2) the defendant voluntarily decided to drive, knowing that he or she had consumed an intoxicating agent and might be intoxicated; and (3) the defendant’s operation of the motor vehicle caused the victim’s death.[48]
It is ironic that the Lardie Court recognized that the Legislature’s intent in passing § 625(4) was “to deter th[e] gravely dangerous conduct”[49] of driving while intoxicated, yet interpreted § 625(4) in such a way so as to limit substantially the applicability of § 625(4) beyond that which the Legislature envisioned. As Justice WEAVER noted in her Lardie concurrence, the Lardie majority’s “demanding burden of proof-requiring the prosecution to show that the defendant’s intoxication changed his or her manner of operation-“was not intended by the Legislature and is not found in the language of the statute.”[50] Unlike the Lardie Court, we believe that the best way to “deter this gravely dangerous conduct” is to enforce the statute as written and thereby give the statute the teeth that the Legislature intended.[51]
*435 Having determined that § 625(4) requires the victim’s death to be caused by the defendant’s operation ,of the vehicle, rather than the defendant’s intoxicated manner of operation, we turn to the issue of defining the term “cause.” In the criminal law context, the word “cause” has acquired a unique, technical meaning.[52] Accordingly, pursuant to MCL 8.3a, we must construe the term “according to [its] peculiar and appropriate meaning” in the law.[53].
In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause.[54] The concept of factual causation is relatively straightforward. In determining whether a defendant’s conduct is a factual cause of the result, one must ask, “but for” the defendant’s *436 conduct, would the result have occurred?[55] If the result would not have occurred absent the defendant’s conduct, then factual causation exists.[56]
The existence of factual causation alone, however, will not support the imposition of criminal liability.[57] Proximate causation must also be established. As we noted in Tims, proximate causation is a “legal colloquialism.”[58] It is a legal construct designed to prevent criminal liability from attaching when the result of the defendant’s conduct is viewed as too remote or unnatural.[59] Thus, a proximate cause is simply a factual cause “of which the law will take cognizance.”[60]
For a defendant’s conduct to be regarded as a proximate cause, the victim’s injury must be a “direct and natural result” of the defendant’s actions.[61] In making this determination, it is necessary to examine whether there was an intervening cause that superseded the defendant’s conduct such that the causal link between *437 the defendant’s conduct and the victim’s injury was broken. If an intervening cause did indeed supersede the defendant’s act as a legally significant causal factor, then the defendant’s conduct will not be deemed a proximate cause of the victim’s injury.[62]
The standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability. For example, suppose that a defendant stabs a victim and the victim is then taken to a nearby hospital for treatment. If the physician is negligent in providing medical care to the victim and the victim later dies, the defendant is still considered to have proximately caused the victim’s death because it is reasonably foreseeable that negligent medical care might be provided.[63] At the same time, gross negligence or intentional misconduct by a treating physician is not reasonably foreseeable, and would thus break the causal chain between the defendant and the victim.[64]
The linchpin in the superseding cause analysis, therefore, is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant’s conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable — e.g., gross negli *438 gence or intentional misconduct — then generally the causal link is severed and the defendant’s conduct is not regarded as a proximate cause of the victim’s injury or death.
In criminal law, “gross negligence” is not merely an elevated or enhanced form of ordinary negligence. As we held in Barnes, supra, in criminal jurisprudence, gross negligence “means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent.”[65]
Accordingly, in examining the causation element of OUIL causing death, it must first be determined whether the defendant’s operation of the vehicle was a factual cause of the victim’s death. If factual causation is established, it must then be determined whether the defendant’s operation of the vehicle was a proximate cause. In doing so, one must inquire whether the victim’s death was a direct and natural result of the defendant’s operation of the vehicle and whether an intervening cause may have superseded and thus severed the causal link.[66] While an act of God or the gross negligence or intentional misconduct by the victim or a third party will generally be considered a superseding *439 cause, ordinary negligence by the victim or a third party will not be regarded as a superseding cause because ordinary negligence is reasonably foreseeable.[67]
*440 E. APPLICATION
i. PEOPLE V SCHAEFER
Defendant argues that the trial court erred in instructing the jury on OUIL causing death in two respects. First, defendant contends that the trial court’s instruction on the causation element of the crime was flawed. Second, defendant argues that the trial court erred when it reminded the jury three times during instructions about defendant’s stipulation as to his 0.16 blood-alcohol level.
In initially instructing the jury on the causation element of OUIL causing death, the trial court read the text of § 625(4) to the jury. Defendant objected to the instruction, arguing that the standard jury instruction for OUIL causing death, CJI2d 15.11, which incorporated this Court’s Lardie holding, should have been read instead. Less than an hour into deliberations, the jury specifically requested clarification from the trial court on the causation element of OUIL causing death:
The Court: Okay. You’re asking to explain under the influence, as is stated in Count I [OUIL causing death]. [I]s that what you want to know?

Juror No. 11: Also causing death.

The Court: I’m sorry; also what?
Juror No. 11: Under the influence causing death.
The Court: Yeah, okay. All I can do is tell you what the statute says. If that was the case, you have to decide that. [Emphasis added.]
*441 Defendant again objected to the instruction, arguing that the trial court did not adequately explain the causation element of OUIL causing death.
We agree that the trial court erred in instructing the jury on causation, but not for the reasons offered by defendant. Defendant argues that the causation instruction was flawed because the trial court did not instruct the jury that defendant’s intoxicated driving must be a “substantial cause” of the victim’s death, as required by Lardie. As discussed above, the Lardie Court erred in requiring that the defendant’s intoxication, rather than the defendant’s operation of the motor vehicle, constitute the substantial cause. Accordingly, the trial court’s causation instruction was not flawed in the manner asserted by defendant. Instead, we conclude that the trial court erred because the word “cause” in § 625(4) is a legal term of art normally not within the common understanding of jurors, and thus, simply reading the statute to the jury was insufficient. The jury could not be expected to understand that the statute required the prosecutor to prove both factual causation and proximate causation.[68]
Having determined that the causation instruction was flawed, we turn to whether the error was harmless. Mere error alone in instructing the jury is insufficient to set aside a criminal conviction. Instead, a defendant *442 must establish that the erroneous instruction resulted in “a miscarriage of justice.”[69] Specifically, by enacting MCL 769.26, our Legislature has provided:
No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.[70]
As we noted in People v Cornell,[71] in giving effect to the “miscarriage of justice” standard of MCL 769.26, a reviewing court is required to classify the type of alleged instructional error as either constitutional or nonconstitutional, and as either preserved or unpreserved.[72] In Cornell, we held that instructional error based on the misapplication of a statute is generally considered non-constitutional error.[73] As such, any error that the trial court committed in the present case in failing to explain the causation element of § 625(4) was nonconstitutional. Moreover, because defendant promptly objected to the instruction and adequately articulated the basis for the objection, the alleged error was properly preserved.
Accordingly, the alleged instructional error in this case is appropriately classified as preserved, nonconsti *443 tutional error, as noted by the Court of Appeals. In People v Lukity,[74] we held that MCL 769.26 creates a presumption that preserved nonconstitutional error, is harmless unless the defendant demonstrates that the error was outcome determinative.[75] Specifically, in Lukity we stated that MCL 769.26 “presumes that a preserved, nonconstitutional error is not a ground for reversal unless ‘after an examination of the entire cause, it shall affirmatively appear’ that it is more probable than not that the error was outcome determinative.”[76] An error is not “outcome determinative” unless it “ ‘undermined the reliability of the verdict.’ ”[77]
Applying the Lukity standard to the alleged instructional error in the present case, we conclude that any error on the part of the trial court in merely reading the statute and failing to explain the causation element of OUIL causing death was harmless. There is no evidence that the trial court’s failure to explain fully both the factual cause and proximate cause components of the causation element of the offense was “outcome determinative” or that the “reliability of the verdict was undermined.”
Assuming, arguendo, that the jury gave full credit to the testimony of defendant’s expert witness on highway design, the most that the witness’s testimony established was that the freeway exit was negligently designed. The witness presented no evidence that there was any gross negligence in the design of the freeway *444 exit. As such, the design of the freeway exit could not be considered a superseding cause that would prevent defendant from being legally regarded as a proximate cause of the victim’s death. We conclude, therefore, that defendant has failed to rebut the presumption that the alleged instructional error was harmless because he has not demonstrated that the alleged error was outcome determinative in that it undermined the reliability of the verdict, as required by MCL 769.26 and Lukity [78]
Defendant also argues that the trial court committed error requiring reversal when it reminded the jury three times during instructions about defendant’s stipulation as to his 0.16 blood-alcohol level.[79] However, the Court of Appeals declined to address this argument in light of its resolution of this case. Accordingly, we remand this case to the Court of Appeals limited solely to the issue of whether the trial court committed error requiring reversal in making repeated references to the stipulation regarding defendant’s blood-alcohol level.[80] *445 We do not retain jurisdiction.[81]
ii. PEOPLE v LARGE
The first two elements of OUIL causing death are not in dispute. Defendant’s blood-alcohol level was 0.10 grams and he voluntarily chose to drive knowing that he had consumed alcohol. The uncertainty lies in the causation element of the offense.
Defendant’s operation of the vehicle was undeniably a factual cause of the young girl’s death. Absent defendant’s operation of the vehicle, the collision would not have occurred. The issue of proximate causation, however, is less certain. There is evidence that the victim’s death was the direct and natural result of defendant’s operation of the vehicle. At the same time, the victim rode a bicycle without brakes down a partially obstructed hill onto a busy road and, thus, according to the prosecution’s own expert witness, made the collision unavoidable. Given the fact that during the preliminary examination the parties did not directly address the proximate cause issue, including whether the victim’s own behavior was a superseding cause, the proper course is to remand this case to the district court for reconsideration of whether to bind over defendant in light of the principles discussed in this opinion. We do not retain jurisdiction.
IV CONCLUSION
The Lardie Court erred in holding that the defendant’s “intoxicated driving” must be a substantial cause *446 of the victim’s death. There is no textual basis for the Lardie Court’s holding. Indeed, the plain text of the OUIL causing death statute requires no causal link at all between the defendant’s intoxication and the victim’s death. The defendant’s status as “intoxicated” is a separate element of the offense and entirely irrelevant to the causation element of the crime. It is the defendant’s operation of the motor vehicle that must cause the victim’s death under § 625(4), not the manner by which the defendant’s intoxication may or may not have affected the defendant’s operating ability. Therefore, to the extent that Lardie held that § 625(4) requires the defendant’s intoxicated driving to be a substantial cause of the victim’s death, it is overruled. In proving the causation element of OUIL causing death, the people need only prove that the defendant’s operation of the motor vehicle caused, both factually and proximately, the victim’s death.
Accordingly, in People v Schaefer, the judgment of the Court of Appeals is vacated and the case is remanded to the Court of Appeals to address defendant’s remaining argument that the trial court erred so as to require reversal in making repeated references to defendant’s stipulation as to his 0.16 blood-alcohol level during the jury instructions. In People v Large, the judgment of the Court of Appeals is reversed and the case is remanded to the district court for reconsideration of whether to bind defendant over on the charge of OUIL causing death in light of the principles set forth in this opinion. We do not retain jurisdiction in either case.
Taylor, C.J., and Weaver, Corrigan, and Markman, JJ., concurred with YOUNG, J.

 452 Mich 231; 551 NW2d 656 (1996).

 Id. at 259-260 (emphasis added).

 Id. at 234 (emphasis in original).

 We do not disturb our other holdings in Lardie, including that the prosecution need not prove negligence or gross negligence by the defendant, that the defendant must have “voluntarily” decided to drive “knowing that he had consumed an intoxicating liquor,” and that § 625(4) comports with constitutional due process principles. Id. at 249-251, 265-267.

 Defendant denied drinking the beer contained in the empty bottles found in his vehicle. He claimed that the bottles were left over from a party.

 At the time defendant was charged, § 625(1) set the statutory intoxication threshold at a blood-alcohol content of 0.10 grams per one hundred milliliters. Pursuant to 2003 PA 61, however, the statutory intoxication threshold has been reduced from 0.10 to 0.08.

 MCL 257.625(4).

 MCL 750.321.

 CJI2d 15.11 provided at the time:
(1) The defendant is charged with the crime of operating a motor vehicle under the influence of intoxicating liquor ... or with an unlawful bodily alcohol level, or while impaired, and in so doing, causing the death of another person. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
(4) Third, that the defendant was under the influence of intoxicating liquor . . ., or had an unlawful bodily alcohol level, or was impaired while [he / she] was operating the vehicle.
(5) Fourth, that the defendant voluntarily decided to drive knowing that [he / she] had consumed alcohol. .. and might be intoxicated.
(6) Fifth, that the defendant’s intoxicated [or impaired] driving was a substantial cause of the victim’s death.

 Negligent homicide, MCL 750.324, is a lesser-included offense of manslaughter with a motor vehicle. MCL 750.325; People v Weeder, 469 Mich 493, 497-498; 674 NW2d 372 (2004).

 Unpublished opinion per curiam, issued March 25, 2004 (Docket No. 245175).

 Id., slip op at 5.

 471 Mich 923 (2004).

 MCL 750.321.

 MCL 257.625(4).

 MCL 257.625(1).

 MCL 257.312.

 The circuit court also dismissed the manslaughter charge and remanded the case to the district court on the two remaining misdemeanor counts.

 Unpublished opinion per curiam, issued August 10, 2004 (Docket No. 253261).

 Id., slip op at 4.

 Id. (citation omitted).

 471 Mich 923 (2004).

 People v Moore, 470 Mich 56, 61; 679 NW2d 41 (2004); People v Babcock, 469 Mich 247, 253; 666 NW2d 231 (2003).

 People v Perez, 469 Mich 415, 418; 670 NW2d 655 (2003); People v Gonzalez, 468 Mich 636, 641; 664 NW2d 159 (2003).

 People v Yost, 468 Mich 122, 126-127; 659 NW2d 604 (2003); People v Thomas, 438 Mich 448, 452; 475 NW2d 288 (1991).

 Lardie, supra at 253 & n 33.

 Id. at 246-247, 253.

 MCL 257.625(4) (emphasis added). The reference to subsection 8 — intoxication by a schedule 1 controlled substance — in § 625(4) was added as part of 2003 PA 61. At the time that defendants Schaefer and Large were charged, § 625(4) referenced only subsections 1 and 3.

 Although § 625(4) has been amended since our decision in Lardie, none of the amendments limits the holding of Lardie or is otherwise material to the resolution of the present cases.

 Lardie, supra at 245. We stated, “[t]he Legislature must reasonably have intended that the people prove a mens rea by demonstrating that the defendant purposefully drove while intoxicated or, in other words, that he had the general intent to perform the wrongful act.” Id. at 256.

 Id. at 249, 251.

 Id. at 256-257 (emphasis in original).

 Id. at 258 (emphasis added).

 Id. at 258 n 47 (emphasis in original).

 Id. at 259-260 (emphasis added).

 Halloran v Bhan, 470 Mich 572, 576; 683 NW2d 129 (2004); DiBenedetto v West Shore Hosp, 461 Mich 394, 402; 605 NW2d 300 (2000).

 Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002); State Farm Fire & Cos Co v Old Republic Ins Co, 466 Mich 142, 146; 644 NW2d 715 (2002).

 People v Laney, 470 Mich 267, 271; 680 NW2d 888 (2004); People v Phillips, 469 Mich 390, 395; 666 NW2d 657 (2003).

 Roberts v Mecosta Co Gen Hosp, 466 Mich 57, 63; 642 NW2d 663 (2002); People v Stone, 463 Mich 558, 562; 621 NW2d 702 (2001).

 Defendant Schaefer admits this point, stating that “[a] bare reading of the statute does not require that the defendant’s intoxicated driving be a substantial cause of the victim’s death.” Schaefer brief at 12-13 (emphasis in original). He further states, “[t]he statute does not require a nexus between the drunken driving, and the cause of the accident.” Id. at 15.

 MCL 257.625(4) (emphasis added).

 Lardie, supra at 273 (emphasis in original).

 Grossman v Brown, 470 Mich 593, 598; 685 NW2d 198 (2004); Parkwood Ltd Dividend Housing Ass’n v State Housing Dev Auth, 468 Mich 763, 772; 664 NW2d 185 (2003).

 See Lansing Mayor v Pub Service Comm, 470 Mich 154, 164; 680 NW2d 840 (2004); Robertson v DaimlerChrysler Corp, 465 Mich 732, 762; 641 NW2d 567 (2002).

 Lansing Mayor, supra at 164.

 The flaw in the Lardie Court’s analysis is readily apparent when one considers the closely analogous crime of operating a vehicle with a suspended or revoked license and causing death. MCL 257.904(4). The text of § 904(4) parallels the language in § 625(4). Section 904(4) provides:
A person who operates a motor vehicle [under a suspended or revoked license] and who, by operation of that motor vehicle, causes the death of another person is guilty of a felony .... [Emphasis added.]
Under the Lardie Court’s rationale, § 904(4) would require that the defendant’s suspension or revocation somehow affect (i.e., be a “substantial cause” of) the manner by which the defendant operates the vehicle before criminal liability may be imposed. There is obviously no textual basis for such a conclusion, just as there was no such basis in Lardie. As Justice Weaver pointed out in her concurrence in Lardie, the Lardie majority fundamentally misunderstood the nature of a “status crime.” Lardie, supra at 271 n 8. The Lardie majority mistakenly took the status element of the crime — that the defendant was intoxicated — and fused it with the causation element of the offense. Therefore, to the extent that the Lardie Court was simply attempting to articulate a proximate cause requirement by creating its “substantial cause” test, the Lardie Court erred in conflating the “status” and “causation” elements of the crime.

 Lardie, supra at 259-260 (emphasis added). As mentioned in note 4 of this opinion, we do not disturb the other holdings in Lardie.

 MCL 257.625(4); cf. Lardie, supra at 259.

 Lardie, supra at 253.

 Id. at 272.

 As we noted in Robinson v Detroit, 462 Mich 439, 463-468; 613 NW2d 307 (2000), we do not lightly overrule precedent. However, we do not believe that any of the considerations discussed in Robinson counsel against overruling Lardie in the present cases. Notably, we find it difficult to conceive any possible situation in which a “reliance interest” *435 would ever exist in the context of a criminal statute. Additionally, as noted by Justice WEAVER in Lardie, the majority opinion in Lardie defies “practical workability” because the “change” in operating ability due to intoxication that the prosecution must demonstrate creates a nearly impossible burden of proof.

 Indeed, for more than a century, this Court has recognized that “cause” is a term of art in criminal law. See People v Cook, 39 Mich 236 (1878); People v Rockwell, 39 Mich 503 (1878); People v Townsend, 214 Mich 267, 277-280; 183 NW 177 (1921).

 MCL 8.3a provides:
All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. [Emphasis added.]
See also Babcock, supra at 257-258; People v Jones, 467 Mich 301, 304-305; 651 NW2d 906 (2002).

 People v Tims, 449 Mich 83, 95; 534 NW2d 675 (1995); see also 1 Torcia, Wharton’s Criminal Law (15th ed), § 26; LaFave & Scott, Handbook on Criminal Law, § 35, p 246.

 Tims, supra at 95; People v Barnes, 182 Mich 179, 194; 148 NW 400 (1914); see also 1 Torcía, Wharton’s Criminal Law (15th ed), § 26; Perkins, Criminal Law (2d ed), pp 687-688; LaFave & Scott, Handbook on Criminal Law, § 35, p 249 (1972) (“In order that conduct be the [factual] cause of a particular result it is almost always sufficient that the result would not have happened in the absence of the conduct; or, putting it another way, that “but for” the antecedent conduct the result would not have occurred.”).

 Tims, supra at 95.

 Tims, supra at 95.

 Id. at 96.

 See, e.g., Beale, The proximate consequences of an act, 33 Harv L R 633, 640 (1920).

 1 Torcía, Wharton’s Criminal Law (15th ed), § 26, pp 147-148; See also Perkins, Criminal Law (2d ed), p 690.

 Barnes, supra at 198; see also 1 Torcía, Wharton’s Criminal Law (15th ed), § 26; Perkins, Criminal Law (2d ed), pp 690-695; LaFave & Scott, Handbook on Criminal Law, § 35, pp 251-252 (1972); McLaughlin, Proximate cause, 39 Harv L R 149, 183 (1925).

 Cook, supra at 239-240; Townsend, supra at 277-279; People v Vanderford, 77 Mich App 370, 372-373; 258 NW2d 502 (1977).

 Cook, supra at 240. See also Perkins, Criminal Law (2d ed), p 716 (“And negligence, unfortunately, is entirely too frequent in human conduct to be considered ‘abnormal.’ ”); LaFave & Scott, Handbook on Criminal Law, § 35, p 259 (“In short, mere negligence in medical treatment is not so abnormal that the defendant should be freed of liability.”).

 Cook, supra at 240. See also Perkins, Criminal Law (2d ed), p 719; LaFave & Scott, Handbook on Criminal Law, § 35, p 259.

 Barnes, supra at 198.

 Justice Cavanagh suggests in his partial dissent that both the Lardie Court and the majority in the present cases require a “more demanding standard” of proximate cause in the criminal context than that found in tort law. Post at 451. Justice Cavanagh mischaraeterizes both Lardie and the present cases. First, we do not read Lardie to impose the heightened form of proximate cause in criminal law that Justice Cavanagh advocates. In fact, in Tims, which was decided just one year before Lardie, we explicitly rejected that same argument. Second, contrary to Justice Cavanagh’s assertion, we do not adopt a heightened form of proximate cause in the present cases. Instead, we are simply applying the standard of proximate cause that this Court articulated in Tims and that has existed in our criminal jurisprudence for well over a century.

 Had the Legislature intended to require only factual causation and not proximate causation as well, the Legislature would have instead used the words “results in death” rather than “causes the death.”
Indeed, MCL 257.617, which requires motorists involved in accidents to remain at the scene of the accident, specifically uses the phrase “results in ... death.” Section 617(2) provides:
[I]f the individual [flees the scene of an accident] and the accident results in serious impairment of a body function or death, the individual is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $5,000.00, or both. [Emphasis added.]
Accordingly, the Legislature is well aware of how to draft a statute that requires only factual causation and not proximate causation.
The United States Court of Appeals reached the same conclusion in construing an analogous federal criminal statute: distribution of a controlled substance resulting in death, 21 USC 841. Specifically § 841(a)(1) makes it illegal to “knowingly or intentionally . . . distribute ... a controlled substance” and § 841(b)(1)(C) provides an enhanced sentence “if death or serious bodily injury results from the use of such substance ....” (Emphasis added.) In recently addressing the proximate cause issue, the United States Court of Appeals for the Ninth Circuit held:
[P]roximate cause is not a required element for conviction and sentencing under § 841(b)(1)(C). All that is necessary under the statutory language is that “death... results” from the offense described in § 841(a)(1).... Cause-in-fact is required by the “results” language, but proximate cause ... is not a required element. [United States v Houston, 406 F3d 1121, 1124-1125 (CA 9, 2005).]
In so holding, the Ninth Circuit joined numerous other circuits that reached the same conclusion. See United States v Soler, 275 F3d 146, 152 (CA 1, 2002); United States v McIntosh, 236 F3d 968, 972-973 (CA 8, 2001); United States v Robinson, 167 F3d 824, 830-832 (CA 3, 1999); United States v Patterson, 38 F3d 139, 145-146 (CA 4, 1994).
Therefore, if the Legislature had intended to eliminate proximate causation as an element of OUIL causing death, it would have used the *440 phrase “and by the operation of that motor vehicle the death of another person results." The Legislature, however, deliberately chose to use the word “cause” in § 625(4) and thereby incorporated the technical, legal meaning of the term.

 While the trial court was not required to read the jury the standard criminal jury instruction because they are not binding authority, People v Petrella, 424 Mich 221, 277; 380 NW2d 11 (1985), the court was nevertheless obligated to “instruct the jury as to the law applicable to the case.” MCL 768.29. While reading the applicable statute to the jury may well be instructing the jury as to the law applicable to the case in most circumstances, it was not here because the statute contained a term of art jurors are not presumed to understand, i.e., a jury would not understand from a reading of the statute that the existence of factual causation alone would be insufficient to support a guilty verdict.

 MCL 769.26; People v Young, 472 Mich 130, 141-142; 693 NW2d 801 (2005).

 MCL 769.26 (emphasis added).

 466 Mich 335; 646 NW2d 127 (2002).

 Id. at 362-363, citing People v Carines, 460 Mich 750; 597 NW2d 130 (1999). Constitutional errors must further be classified as either structural or nonstructural. Cornell, supra at 363.

 Id. at 364-365; see also People v Rodriguez, 463 Mich 466, 473-474; 620 NW2d 13 (2000).

 460 Mich 484; 596 NW2d 607 (1999).

 Id. at 495-496.

 Id. (citation omitted).

 People v Whittaker, 465 Mich 422, 427; 635 NW2d 687 (2001), quoting People v Elston, 462 Mich 751, 766; 614 NW2d 595 (2000). Recent cases where we found that instructional error required reversal include People v Mass, 464 Mich 615; 628 NW2d 540 (2001), People v Duncan, 462 Mich 47; 610 NW2d 551 (2000), and People v Rodriguez, supra.

 As noted earlier, defendant’s expert witness admitted at trial that his defective design theory was inconsistent with the actual history of accidents associated with the exit ramp.

 Schaefer brief at 26 (“the judge reminded the jurors that the parties stipulated that the Defendant’s blood alcohol level was 0.16. The reminder of the stipulation is used three times in this instruction ... .”).

 Justice Cavanagh’s ex post facto and due process concerns are misplaced. As the United States Supreme Court has held, “The Ex Post Facto Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process thus would circumvent the clear constitutional text.” Rogers v Tennessee, 532 US 451, 460; 121 S Ct 1693; 149 L Ed 2d 697 (2001). Although it is true, as Justice Cavanagh indicates, that prior precedent from the United States Supreme Court and this Court has held that there are due process limitations on the retroactive application of judicial interpretations of criminal statutes that are “unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,” post at 453-454, we believe that it is not “indefensible or unexpected” that a court would, as we do today, overrule a case that failed to abide by the express terms of a statute.

 Because we conclude that the trial court’s other instructional errors were harmless, the Court of Appeals is to consider on remand only whether the trial court’s multiple references to the stipulation constituted error requiring reversal — i.e., that a “miscarriage of justice” occurred, as required by MCL 769.26 and Lukity. If the Court of Appeals determines that no “miscarriage of justice” occurred, defendant’s conviction of OUIL causing death is to be affirmed.