# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHARDAY VIOLA-BIANCA GREEN,

Defendant-Appellant.

UNPUBLISHED
August 21, 2018

No. 337514
Wayne Circuit Court
LC No. 16-006314-01-FH

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial convictions of operating a motor vehicle while license suspended, revoked, or denied causing death (operating without a license causing death), MCL 257.904(4), and committing a moving violation causing death, MCL 257.601d(l). Defendant was sentenced to concurrent prison terms of 3 to 15 years for operating without a license causing death and 6 months to 1 year for committing a moving violation causing death. We affirm.

## I. BACKGROUND

This case results from a vehicle accident at the intersection of Ecorse Road and Niagara Street in Romulus. Defendant was driving an automobile and the victim, Roberto Diaz, was driving a motorcycle. No witnesses viewed the crash, but, shortly after the crash, witnesses saw defendant's automobile parked sideways on Ecorse Road, indicating that it had stopped mid-turn after proceeding through the stop sign on Niagara Street. The victim's body was pinned underneath defendant's car and, when officers arrived on scene, the victim had already succumbed to his injuries. An autopsy later concluded that the victim died of a broken neck and damage to his helmet indicated that his head made contact with defendant's automobile. Damage to the motorcycle and defendant's automobile also indicated that the two vehicles had crashed.

A fifty-foot skid mark indicated that that the victim applied the motorcycle's brakes heavily to avoid the crash with defendant's automobile. Data recovered from defendant's automobile showed no evidence that defendant had stopped at the intersection. Moreover, a Good Samaritan who stopped at the scene testified that, when defendant exited her automobile after the apparent crash, she stated, "I didn't see him. I was on my cellphone." For her part,

defendant testified that she stopped at the stop sign and yielded to traffic before proceeding to turn from Niagara Street onto Ecorse Road. According to defendant, when she turned, she heard a "boom." Still, defendant testified that she continued her turn before her car stopped in the middle of the intersection, at which point, she exited her vehicle and found the victim under her car. Defendant was not under the influence of any substance at the time of the crash, but it is undisputed that she did not possess a valid driver's license.

As noted previously, the jury convicted defendant of operating without a license causing death and committing a moving violation causing death, and she was sentenced accordingly. This appeal followed.

## II. ANALYSIS

Defendant argues that the prosecution presented insufficient evidence to convict her of operating a vehicle without a license causing death. Defendant does not challenge her conviction for committing a moving violation causing death. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). The reviewing court must determine if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each criminal element beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). A trier of fact may consider circumstantial evidence and all reasonable inferences that evidence creates. *Solloway*, 316 Mich App at 180-181. "This Court reviews de novo issues of statutory interpretation." *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

Under MCL 257.904(4), a person who operates a vehicle on a public roadway without a license "and who, by operation of that motor vehicle, causes the death of another person is guilty of a felony." Defendant does not dispute that she was operating a vehicle on a public roadway without a license. Rather, defendant claims that she cannot be convicted under MCL 257.904(4) because the evidence was insufficient to show that (1) her operation of the vehicle caused the victim's death and (2) her failure to obtain a valid driver's license caused the accident.

On the first claim, we note that the victim was found pinned under defendant's car. Moreover, the crash-scene evidence showed that defendant was in the process of making a turn onto Ecorse Road after proceeding through a stop sign and that the victim slammed on his brakes in an attempt to avoid the crash. There is no evidence that defendant stopped at the stop sign and, according to defendant's own testimony, even after she heard a "boom," she still did not stop her vehicle. Rather, her vehicle stopped because it was dragging the victim. Finally, a witness testified that, shortly after the crash, defendant stated that she did not see the victim because she was on her phone. Although no witness saw the accident occur, the evidence was sufficient for a rational trier of fact to conclude that defendant's failure to yield to traffic caused the accident and, in turn, caused the victim's death.

On the second claim, in *People v Schut*, 265 Mich App 446, 452; 695 NW2d 551 (2005), a prior panel of this Court concluded that a conviction under MCL 257.904(4) required evidence sufficient for a rational jury to find beyond a reasonable doubt that there was a causal link between the defendant's failure to be properly licensed and the victim's death. The Supreme Court, however, peremptorily reversed the prior panel's decision "in light of [the Supreme

Court's] decision in *People v Schaefer*, 473 Mich 418; 703 NW2d 774 (2005)." *People v Schut*, 474 Mich 865; 703 NW2d 471 (2005).

In *Schaefer*, 473 Mich at 431, the Supreme Court addressed MCL 257.625(4), which provides that a person who operates a vehicle on a public roadway while intoxicated and who, "by operation of that motor vehicle causes the death of another person is guilty" of a felony. The Supreme Court concluded that to convict a defendant of operating while intoxicated causing death, the prosecution need not establish a causal link between the intoxication and the death. *Id*. Rather, under the plain language of the statute, the prosecution need only prove that the defendant operated the vehicle while intoxicated and that the defendant's operation of the vehicle caused the death. *Id*. at 433.

Preemptory orders of the Supreme Court are binding precedent on this Court to the extent that they can be understood, "even if doing so requires one to seek out other opinions." *Woodring v Phoenix Insurance Co*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 324128); slip op at 3. Here, the Supreme Court's order in *Schut*—rejecting the assertion that a causal link must be shown between the failure to hold a valid driver's license and the death and directing the trial court to apply *Schaefer*—permits only one reasonable interpretation on defendant's claim here: to convict a defendant under MCL 257.904(4), the prosecution must prove that the operation of the vehicle caused the death, not that the failure to hold a valid driver's license caused the death. Our conclusion is buttressed by the fact that the Legislature used the same operative language in MCL 257.625(4), the statute at issue in *Schaefer*. See *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 426; 565 NW2d 844 (1997) (explaining that "identical language should certainly receive identical construction when found in the same act" (cleaned up)[1]). Accordingly, we conclude that the Supreme Court's order in *Schut*, 474 Mich 865, constitutes binding precedent for the proposition that, to convict a defendant under MCL 257.904(4), the prosecution need not prove a causal link between the failure to hold a valid driver's license and the death.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that non-substantive clutter such as brackets, internal quotation marks, alterations, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).