*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 8, 2024

Plaintiff-Appellee,

v

No. 367789
Livingston Circuit Court
LC No. 23-000330-AR

MICHAEL MARC MORGAN,

Defendant-Appellant.

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the order denying his motion to admit evidence of the victim's blood-alcohol concentration (BAC). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On May 13, 2022, defendant was driving his car southbound on Kensington Road in Brighton Township. The victim was traveling northbound on the same road on his motorcycle. Shortly before the collision, the victim was stopped at a red light. When the light turned green, he accelerated quickly. According to one witness, it looked like the victim's motorcycle "took off like a bat" accelerating "heavily" when the light changed. Around this time, defendant began to make a U-turn, and entered the southbound lane in which the victim was traveling. Defendant and the victim collided and the victim was thrown from his motorcycle. In the moment before a collision, an eyewitness reported witnessing the victim move from "just left of centre [sic] to the right about one foot" before it struck the right front end of defendant's turning vehicle. He ultimately died from his injuries. Defendant apparently never saw or heard the motorcycle approaching because after the collision he reported that as he was turning his car, he was hit "out of nowhere" and the impact caused his car to spin. Defendant was cited for careless driving, a

---

[1] *People v Morgan*, unpublished order of the Court of Appeals, entered November 27, 2023 (Docket No. 367789),

civil infraction. MCL 257.626b. He was later charged with a moving violation causing death under MCL 257.601d(1) for the victim's death.

A toxicology report revealed that the victim's BAC was .059 g/dL (grams per deciliter) at the time of his death. At a pretrial hearing, defendant moved to admit evidence of the victim's speed and BAC. In terms of the victim's BAC, defendant sought to admit the toxicology report and expert testimony that the victim could have been impaired at the time of the collision and the effects alcohol may have had on the on the victim's operation of his motorcycle. The district court concluded that the evidence of the victim's speed was admissible at trial, but not the evidence of the victim's BAC. Defendant appealed to the circuit court, which denied his application. This appeal followed.

## II. THE VICTIM'S BAC

Defendant argues that the district court abused its discretion in denying his motion to admit evidence of the victim's BAC. He asserts that the victim's alcohol level is admissible at trial to evaluate whether he was the proximate cause of the victim's death. We disagree.

## A. STANDARDS OF REVIEW

Evidentiary rulings are reviewed for an abuse of discretion. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "An abuse of discretion occurs when the trial court reaches a result that is outside the range of principled outcomes." *Id*. Questions involving statutory interpretation are reviewed de novo. *People v Marion*, 250 Mich App 446, 448; 647 NW2d 521 (2002). "In interpreting statutes, we start by examining the plain language of the statute and if the statutory language is plain and unambiguous, then no judicial interpretation is necessary or permitted." *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020).

## B. LAW AND ANALYSIS

To convict defendant of a moving violation causing death, the prosecution must show his "moving violation was the proximate cause of the death of another person." MCL 257.601d(1). "For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a direct and natural result of the defendant's actions." *People v Schaefer*, 473 Mich 418, 436; 703 NW2d 774 (2005) (quotation marks and citations omitted). But, a victim's gross negligence may create a superseding cause that breaks the causal chain. *People v Feezel*, 486 Mich 184, 195; 783 NW2d 67 (2010). "Gross negligence . . . is more than an enhanced version of ordinary negligence." *Id*. Rather, gross negligence "means wantonness and disregard of the consequences which may ensue[.]" *Id*.

Our Supreme Court has been clear that "any level of intoxication on the part of a victim is not automatically relevant, and the mere consumption of alcohol by a victim does not automatically amount to a superseding cause or de facto gross negligence." *Feezel*, 486 Mich at 202. Rather, courts should first "determine whether the evidence tends to make the existence of gross negligence more probable or less probable than it would be without the evidence[.]" *Id*.

Thus, when determining whether evidence of a victim's intoxication is admissible, the trial court must make a threshold determination that evidence of the victim's conduct is sufficiently probative for a proper purpose—to show gross negligence. In other words, the trial court must determine that the issue of gross negligence is "in issue." The court may allow the admission of evidence of the victim's intoxication to aid the jury in determining whether the victim's actions were grossly negligent only when the proofs are sufficient to create a question of fact for the jury. If a trial court cannot come to the conclusion that a reasonable juror could view the victim's conduct as demonstrating a wanton disregard of the consequences that may ensue, however, then the evidence of intoxication is not admissible. [*Id*. (citation omitted).]

On appeal, defendant challenges the district court's refusal to admit into evidence of (1) the toxicology report showing the victim's BAC, and (2) the exclusion of Dr. Ronald E. Henson's expert testimony.

We first consider whether the district court erred by refusing to admit the victim's toxicology report. The facts in *Feezel* are instructive when examining whether a victim's BAC is relevant to the issue of gross negligence, and therefore admissible at trial. In *Feezel*, the defendant struck and killed an intoxicated pedestrian who was inexplicably walking "in the middle of the road with his back to traffic at night during a rain storm with a sidewalk nearby." *Id*. at 199. "The victim was extremely intoxicated, and his blood alcohol content (BAC) was at least 0.268 grams per 100 milliliters of blood." *Id*. at 188-189. The trial court granted the prosecutor's motion to suppress evidence of the victim's BAC. *Id*. at 189. Our Supreme Court ultimately granted leave to determine whether the trial court abused its discretion by refusing to admit evidence the victim's BAC. The Court began its analysis by cautioning trial courts that that "while intoxication may explain why a person acted in a particular manner, being intoxicated, by itself, is not conduct amounting to gross negligence." *Id*. at 199. But the Court ultimately concluded that evidence of the victim's extreme intoxication was wrongly excluded at trial because there was sufficient evidence that the victim was conducting himself in a grossly negligent manner separate and distinct from the victim's BAC. The Court reasoned that because the issue of gross negligence was at issue, the victim's intoxication was relevant for the jury to consider "whether the victim acted with wantonness and a disregard of the consequences which may ensue[.]" *Id*. (quotation marks omitted).

The victim's conduct in this case is very different from what occurred in *Feezel*. The *Feezel* victim's act of walking in the middle of a road, at night, during a rainstorm was the superseding cause that provided a threshold showing of gross negligence. *Id*. at 199. Only after the defendant made that showing did the victim's high level of intoxication become relevant as to the issue of gross negligence and proximate cause. In this case, however, the victim was operating his motorcycle during the day and within his proper lane. The fatal collision occurred when defendant turned his car into oncoming traffic while attempting to complete a U-turn. Although the victim's speeding would have shortened both drivers' reaction time, the question here is whether the act of exceeding the speed limit by, at most, 20 MPH under these conditions provides the necessary showing of gross negligence. The district court reasoned that speeding at this rate is a common, foreseeable occurrence on our roadways, stating:

[U]nder these fact and circumstances . . . it was broad daylight; you're at a busy intersection; there's a U-turn. And if you're making a U-turn and you're in the wrong lane of travel, it's reasonably foreseeable that somebody is going to be coming.

Now . . . [the victim] may have been going 75, but . . . we've got the expert that's going to testify to that. We've got this gentleman who, your expert . . . went and interviewed, saying he thinks he was going . . . fast, but I mean, that's going to come down to credibility[.]

The district court's sensible ruling was not outside of the range of principled outcomes. *Benton*, 294 Mich App at 195.

Defendant, recognizing that the speed in this case is insufficient, argues that the combination of the victim's speed and his BAC evinces gross negligence. Specifically, defendant points to his expert's opinion about how the victim's BAC level generally affects a person's judgment and reaction time and then uses that opinion to speculate that the victim's dulled senses caused him to be unable to "slow down and navigate through traffic in a safe manner[.]" But defendant's approach to this issue is inconsistent with *Feezel*. *Feezel* instructs that trial courts must first examine the victim's actual conduct exhibited. In this case, that means we examine whether the victim's actual operation of his motorcycle makes out a preliminary showing of gross negligence. Because defendant failed to establish a question of fact that the victim operation of his motorcycle was in a grossly negligent manner, let alone that his BAC contributed to it, the district court did not abuse its discretion when it concluded evidence of the victim's intoxication was not admissible.

We are also not persuaded by defendant's argument that Dr. Henson's testimony would have explained the nexus between the victim's speed and his alcohol consumption. First, given our conclusion that the speeding at issue in this case was not grossly negligent, the possible nexus between speed and alcohol does not alter our analysis. And even if the nexus was relevant, we note that the report by Dr. Henson only outlined the probable "pharmacological affect[s]" of the victim's BAC. This report did not state that the victim's BAC could have caused him to speed. Because the report lacked any indication of a connection between the victim's BAC and his speed, the district court did not err by concluding that Dr. Henson's proposed testimony about his findings lacked relevance and was therefore inadmissible.

Finally, defendant argues Dr. Henson's testimony was necessary to explain "retrograde extrapolation"—a method used to measure a person's BAC at a certain point in time. Although the victim's BAC when tested after the collision showed .059 g/dL, Dr. Henson's opined in his report that the victim's BAC at the time of the accident could have "peak[ed]" and been as high as .071 g/dL to .081 g/dL. Our review of the district court's decision is the highly deferential abuse-of-discretion standard. *Benton*, 294 Mich App at 195. The district court, rationally reviewing the

evidence, did not abuse its discretion by refusing to admit testimony which opined that the amount of alcohol in the victim's system at the time of the accident.

Affirmed.

/s/ Michael J. Riordan
/s/ Thomas C. Cameron