*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EZRA HENRY PHILLIPS,

Defendant-Appellant.

UNPUBLISHED
March 26, 2025
1:33 PM

No. 366144
Kalamazoo Circuit Court
LC No. 2021-001123-FC

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant-appellant, Ezra Henry Phillips, appeals as of right his jury trial conviction of two counts of operating a vehicle while intoxicated causing death, MCL 257.625(4)(a). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve two concurrent terms of 20 to 30 years' imprisonment.

On appeal, appellate counsel argues on defendant's behalf that he is entitled to a new trial because the prosecution failed to notify the defense of the existence of a material witness. In addition, counsel challenges the proportionality of the upward departure sentence imposed on defendant. Defendant, in a Standard 4 Brief,[1] also raises several claims. He claims that he was denied the effective assistance of counsel because defense counsel failed to consult an expert accident reconstructionist or a toxicologist. He also challenges the upward departure sentence and the scoring of the minimum sentencing guidelines. Further, he asserts that the trial court erred by declining to instruct the jury about intervening causes of the decedents' deaths and that he was not the proximate cause of the decedents' deaths. For the reasons set forth in this opinion, we affirm defendant's convictions and sentence.

---

[1] See Administrative Order No. 2004-6, 471 Mich c, cii (2004).

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of a fatal motor vehicle accident that occurred at approximately 3:00 p.m. on May 7, 2021, at the intersection of US-131 and XY Avenue in Kalamazoo County, Michigan. In this area, US-131 is a divided roadway with a grass median, and the speed limit for traffic on US-131 is 55 miles per hour. There was a traffic signal at the intersection. Traffic traveling southbound or northbound on US-131 had a flashing yellow light. Traffic traveling east and west on XY Avenue had a flashing red light and a fixed stop sign. As a result, traffic traveling on US-131 had the right of way but was to proceed through the intersection with caution. Traffic traveling on XY Avenue was required to stop before proceeding through the intersection, and traffic on XY Avenue could permissibly enter the intersection if it was clear. The traffic signals were functioning properly that day.

At the time of the accident, defendant was driving a white Dodge Durango southbound on US-131 toward XY Avenue. Joel and Dolores Shaffer were in a Chevrolet Impala traveling eastbound on XY Avenue across US-131 when it was struck by the Durango. Both Joel and Dolores died at the scene. According to the responding trooper from the Michigan State Police, the driver's side of the Impala had been "crushed into the passenger side." There was also testimony that the driver's seat had been pushed into or on top of the front passenger seat.

Electronic data records retrieved from the Durango indicated that defendant was traveling 115 miles an hour 5 seconds before the accident and 83 miles an hour when the Durango made impact with the Impala. The data further indicated that the Durango's brakes were applied 2.6 seconds before impact, while the vehicle was traveling 114 miles per hour. Electronic data records retrieved from the Impala indicated that it was traveling 1 mile per hour 5 seconds before impact, 4 miles per hour 4 seconds before impact, seven miles per hour 3 seconds before impact, nine miles per hour 2 seconds before impact, and nine miles per hour 1 second before impact. The Impala's brakes were applied at some point between 2 and 2.5 seconds before impact.

Results from a subsequent blood draw obtained from defendant at 4:55 p.m. on the date of the accident showed that defendant's blood alcohol content was 0.167 grams of alcohol per 100 millimeters of blood. This was over twice the legal limit in Michigan of 0.08 grams of alcohol per 100 millimeters of blood.

Following trial, the jury convicted defendant of two counts of operating while intoxicated causing death.[2] After this appeal was filed, defendant sought postjudgment relief and moved for a new trial on the basis that the prosecution failed to identify a res gestae witness who witnessed the accident. Defendant alternatively moved to adjourn and for further discovery. The trial court denied defendant's motion for a new trial or for an adjournment to conduct further investigation and denied defendant's motion for discovery.

---

[2] The jury acquitted defendant of two counts of second-degree murder, MCL 750.317.

## II. ANALYSIS

### A. MISSING WITNESS

On appeal, defendant first argues that the trial court abused its discretion by denying his motion for a new trial that was based on the failure by police, and in turn the prosecution as a result, to disclose a known res gestae witness. Defendant further argues that the trial court also abused its discretion by declining to grant an adjournment to allow further investigation of this witness.

We review a trial court's decision whether to grant a new trial for an abuse of discretion. *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). We also review the trial court's decision whether to grant a motion for adjournment for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*.

Defendant's appellate argument arises out of statements made by Richard Noel during his trial testimony. Noel was an eyewitness to the accident who was interviewed by law enforcement and testified at trial. Noel testified that he was driving in the left southbound lane on US-131 with his fiancée as a passenger when a white SUV passed him on the right at a high rate of speed. Noel was traveling approximately 55 miles an hour, which he believed was the speed limit. He indicated that he was driving a Dodge Ram 1500 and that his truck "shook" when the SUV passed him. Noel stated, "he passed me like I was sitting still." He later told Michigan State Police Trooper Cody Donnay that he believed that the Durango was traveling 120 miles an hour when it passed him.

According to Noel, the SUV moved to the left lane after passing him and crashed into the Shaffers' vehicle approximately 5 to 7 seconds later, as it was crossing the intersection. Noel testified that he had seen the Shaffers' vehicle stopped at the intersection ahead as defendant's vehicle was approaching Noel's vehicle from behind to pass it. The prosecutor asked Noel the following clarifying question:

> *Q.* So, just to clarify, is it your testimony that the Shaffer's [sic] actually pulled up and stopped at that intersection around the time that the defendant was pulling up besides [sic] you passing you?
>
> *A.* Correct.

Noel explained that he did not see the Shaffers' vehicle begin to cross the intersection because he was paying attention to defendant's vehicle. He believed that if the Shaffers had proceeded through the intersection at a normal speed and defendant's vehicle had not been there to hit them, the Shaffers would have made it through before Noel reached the intersection given that he was traveling approximately 55 miles per hour.

On cross-examination, defense counsel asked about statements attributed to Noel in the police report. Defense counsel asked whether Noel "further advised that after the Durango passed him on the right, he watched a silver Impala pull out from the intersection." Noel denied making that statement. He explained that his fiancée, who was riding in the car with him at the time, was

also adding her observations while Noel was being interviewed by the police. Moreover, Noel clarified that he saw another car in front of the Shaffers' car. That car crossed US-131 without incident. However, he only saw one car stopped at the red blinking light on XY Avenue.

After defendant was convicted and sentenced, defendant moved through appointed appellate counsel for a new trial as mentioned previously. Defendant argued that it was apparent that Noel's passenger also witnessed the crash, but she was not interviewed by the police or identified in the police report, nor was she called as a witness at trial. Defendant argued in the alternative that further investigation was required to "locate and interview this witness as she may have important testimony for [defendant's] defense," including an "eyewitness account of what the victim's car was doing at the stop sign prior to the crash that differed from the other eyewitnesses presented at trial." At the hearing on the motion, defendant's appellate counsel stated:

> So, what I've done is I've had a private investigator go talk to Mr. NoeI, and it turned out this witness was actually home, and she revealed her name.

> We know she (inaudible) her name, and we know where she's at. I just need to get her served a subpoena because she wouldn't cooperate with the private investigator. And then Mr. Noel showed up and it sounded like he made some threatening comments.

> * * *

> I had my private investigator contact Trooper Donnay who was the lead investigator in this case. Mr. Donnay told my - - my guy he didn't interview the other witness because Mr. Noel saw everything, and I - - I don't know why. I don't know why that - - why he would not interview a witness (inaudible). So, he may need to be subpoenaed.

On appeal, defendant argues that MCL 767.40a was violated because Trooper Donnay only interviewed Noel and did not indicate that there was another witness to the accident, which in turn led to the failure to include Noel's fiancée on the prosecution's required disclosure of res gestae witnesses.

MCL 767.40a concerns the disclosure of witnesses before a criminal trial and provides, in pertinent part, as follows:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and *all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.*

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known. [Emphasis added.]

-4-

"A res gestae witness is a person who witnesses some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts." *People v Gadomski*, 232 Mich App 24, 32 n 3; 592 NW2d 75 (1998) (quotation marks and citation omitted). MCL 767.40a(5) provides, in pertinent part, that "[t]he prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness." The "underlying purpose" of MCL 767.40a is "to provide notice to the accused of potential witnesses." *People v Everett*, 318 Mich App 511, 518; 899 NW2d 94 (2017).

Assuming without deciding that MCL 767.40a was violated as a result of the failure to disclose a res gestae witness known to investigating law enforcement officers, a defendant "must show that he was prejudiced by noncompliance with the statute" for a violation of MCL 767.40a to warrant reversal. *Everett*, 318 Mich App at 523 (quotation marks and citation omitted).

Here, there was extensive evidence presented at trial concerning the events that occurred before the accident. Noel testified as to his observations, including that defendant was traveling at a high rate of speed. The accident reconstructionist testified about the speed and position of each vehicle five seconds before impact. He opined that the Impala had already begun the process of entering the intersection five seconds before the crash, while defendant—who was traveling at 115 miles an hour—would have been 842.9 feet away, a length of just under three football fields. Both Noel and the reconstructionist believed that if defendant was traveling at the speed limit of 55 miles an hour, then the Impala would have cleared the intersection. The accident reconstructionist testified that it would have been difficult for someone in the Shaffers' position to gauge the speed of a vehicle approaching from the distance and direction at which defendant's vehicle approached the intersection. Moreover, according to MCL 257.649(7), "[t]he driver of a vehicle traveling at an unlawful speed forfeits a right of way that the driver might otherwise have under this section." There was also testimony concerning the aftermath of the accident, including the damage to the vehicles and the injuries suffered by the occupants of those vehicles.

In light of this evidence, it is unclear how further testimony about observations of the Shaffers' vehicle driving into the intersection, which is the testimony defendant claims could have been provided by Noel's fiancée, would have had any effect on the jury's verdict. As a result, defendant has not shown that the failure to identify and present Noel's fiancée as a witness affected the outcome of his trial and defendant consequently has not established the requisite prejudice for reversal to be warranted based on a violation of MCL 767.40a. *Everett*, 318 Mich App at 523. The trial court's rulings thus did not constitute an abuse of discretion.

B.  UPWARD DEPARTURE SENTENCE

Next, defendant contends that the trial court imposed a disproportionate upward departure sentence.

"We review a trial court's upward departure from a defendant's calculate guidelines range for reasonableness." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017).

[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set

forth in *People v Milbourne*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." [*People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 237 (2017).]

According to the Michigan Supreme Court,

a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender. [*Id*. at 472 (quotation marks and citation omitted).]

"[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. (quotation marks and citation omitted). "Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017).

Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight . . . . [*Id*. at 525 (citations omitted).]

"When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been . . . ." *Id*. (quotation marks and citations omitted).

In this case, defendant's sentencing guidelines were calculated at 62 to 171 months. The trial court stated its understanding of the guidelines and that the guidelines were advisory. The court also explained that it read the presentence investigation report and the prosecutor's sentencing memorandum. The trial court noted that it had the discretion to sentence defendant to consecutive sentences. See MCL 769.36(1)(a). However, the court declined to impose consecutive sentences and opted to impose concurrent sentences of 20 to 30 years' (240 to 360 months) imprisonment.

The court explained that the circumstances involved a "tragic" and "senseless" loss of two lives. The trial court also noted that there was testimony that the accident scene was "horrific" and among the worst scenes that one of the first responders had ever seen. The court referenced the extreme nature of the injuries the decedents suffered at the time of death, the extremely excessive speed at which defendant was driving, defendant's extremely high blood-alcohol content, and the fact that defendant was on probation for a drunk driving offense at the time of the

current accident.  Finally, the trial court adopted the prosecution's reasons for exceeding the guidelines, which essentially focused on the high degree of recklessness exhibited by defendant.

The trial court's sentencing explanation indicated that it did not believe that the guidelines reflected the seriousness of the offense.  See *Dixon-Bey*, 321 Mich App at 525.  Although Offense Variable (OV) 17 was assessed 10 points for wanton and reckless behavior, see MCL 777.47(1)(a), the trial court explained that defendant was more irresponsible than someone driving at a high rate of speed on the highway because he was driving 115 miles an hour in a rural area with a blood alcohol content of 0.167.  The court did not believe that the Shaffers initially would have been able to see defendant's vehicle from almost three football fields away and recognize that he was approaching at such an excessive speed.  The trial court described defendant's conduct as "shocking."  The court stated, "I just can't imagine even driving that fast in that area without knowing that something serious is going to happen."

In light of the extreme severity of the criminal conduct in this case compared to other conduct that could also constitute operating a vehicle while intoxicated causing death, and the trial court's explanation for its sentence, defendant has not shown that the court abused its discretion by departing from the recommended minimum sentencing guidelines in this case.  See *Steanhouse*, 500 Mich 453, 459-460.

Defendant additionally asserts in his Standard 4 Brief that his sentence violates our state constitutional prohibition against cruel or unusual punishment. Const 1963, art 1, § 16.[3]  A grossly disproportionate sentence may constitute cruel or unusual punishment that violates Const 1963, art 1, § 16.  *People v Bullock*, 440 Mich 15, 32, 37, 39-41; 485 NW2d 866 (1992).[4]  However, because defendant's sentence is not disproportionate, defendant has not demonstrated that it constitutes cruel or unusual punishment.  See *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) ("[A] sentence that is proportionate is not cruel or unusual punishment.").

## C.  STANDARD 4 BRIEF

The remaining claims were raised in defendant's Standard 4 Brief.

---

[3] Defendant does not refer to the federal constitutional prohibition against cruel *and* unusual punishment under US Const, AM VIII.  Regardless, our "state Constitution's ban on 'cruel or unusual' punishment offers broader protection than its federal counterpart." *People v Parks*, 510 Mich 225, 242; 987 NW2d 161 (2022).

[4] In *Bullock*, 440 Mich at 37 n 17, the Michigan Supreme Court noted:

> Because the similarity in terminology may create confusion, we note that the *constitutional* concept of "proportionality" under Const 1963, art 1, § 16 is distinct from the nonconstitutional "principle of proportionality" discussed in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990), although the concepts share common roots.

## 1. INEFFECTIVE ASSISTANCE OF COUNSEL

First, defendant argues that he was denied the effective assistance of counsel at his trial because counsel failed to present an expert toxicologist and an expert reconstructionist.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Because there has not been an evidentiary hearing on this issue, our review is limited to the existing record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). See also *Strickland v Washington*, 466 US 668, 687, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Sabin (On Second Remand)*, 242 Mich App at 659.

Defense counsel's decision whether to retain an expert witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The "failure to investigate and attempt to secure a suitable expert witness to assist in preparing the defense may constitute ineffective assistance." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018). "However, effective counsel need not always provide an equal and opposite expert." *Id*. (quotation marks and citation omitted). Furthermore, the failure to call a witness generally "can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Payne*, 285 Mich App at 190 (quotation marks and citation omitted).

In this case, defendant argues that expert witnesses would have been beneficial at his trial. However, defendant has not identified any proposed expert witnesses or revealed the specific testimony that such experts would have provided at his trial. Rather, he speculates as to general topics about which unnamed experts *may* have been able to testify. For instance, he asserts that a toxicologist could have explained how drugs could have affected Joel's ability to drive. However, the pathologist testified that there were no positive results in Joel's toxicology test for alcohol, tobacco, or illicit substances.[5] As a result, there is no evidence indicating that any substances affected Joel's ability to drive. Moreover, defendant fails to explain how these proposed defense experts would have disputed or added to the testimony provided by the prosecutor's experts, namely the pathologist or the accident reconstructionist. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *Carll*, 322 Mich App at 703.

---

[5] According to the pathologist, there are minimum reporting thresholds for certain substances, so it appears that this conclusion may also be understood as a conclusion that there was not a toxicologically or physiologically significant amount of any of these substances detected.

Therefore, defendant has not established that defense counsel was deficient for failing to present an expert toxicologist or expert reconstructionist at trial or that any alleged error in this regard resulted in the requisite prejudice, and defendant has thus not shown that he was denied the effective assistance of counsel. See *Payne*, 285 Mich App at 190.

Additionally, defendant briefly indicates that defense counsel was ineffective for failing to exclude the results of the blood-alcohol-content test. However, he does not identify any grounds that would support the preclusion of this evidence, aside from the assertion that the test results were misleading to the jury. In any event, defendant does not explain how the results were misleading. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Further, "[i]neffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). Defendant's insufficiently developed argument on this particular issue also constitutes abandonment of the claim because an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Payne*, 285 Mich App at 195 (quotation marks and citation omitted). Accordingly, defendant has not shown that defense counsel provided ineffective assistance at his trial. See *Sabin (On Second Remand)*, 242 Mich App at 659.

## 2. JURY INSTRUCTIONS

Defendant also argues that the trial court improperly instructed the jury.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination [whether] a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *Id*. "Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Id*. "Jury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Id*.

In this case, defendant argues that the trial court erred by denying his request for the jury to be instructed consistent with M Crim JI 16.15, which provides:

> [There may be more than one cause of death.] It is not enough that the defendant's act made it possible for the death to occur. In order to find that the death of [*name deceased*] was caused by the defendant, you must find beyond a reasonable doubt that the death was the natural or necessary result of the defendant's act.

The use note accompanying this instruction, in pertinent part, provides the following:

> This instruction is designed for use where there is an issue as to whether the act of the defendant caused death, or whether death was caused by some intervening cause.

> Where the conduct of the deceased may have caused or contributed to death, give M Crim JI 16.20, Contributory Negligence.

The trial court declined to provide the M Crim JI 16.15 instruction. Instead, the court gave the instruction in M Crim JI 16.20, which provides: "If you find that [*name deceased*] was negligent, you may only consider that negligence in deciding whether the defendant's conduct was a substantial cause of the accident."

Defendant argues on appeal that the jury should have been instructed in accordance with M Crim JI 16.15 based on defendant's theory that Joel was grossly negligent in his navigation of the intersection, which was an intervening cause of his death. However, it appears that the trial court instructed the jury consistent with the model jury instructions for addressing the theory of causation advocated by defendant. Defendant does not provide any argument on appeal attempting to explain how the court's approach denied him the proper instruction for his theory of defense. This instruction issue is therefore abandoned. *Payne*, 285 Mich App at 195. Furthermore, MCR 2.512(D) provides in relevant part:

> (2) Pertinent portions of the instructions approved by the Committee on Model Civil Jury Instructions or the Committee on Model Criminal Jury Instructions or a predecessor committee must be given in each action in which jury instructions are given if

> (a) they are applicable,

> (b) they accurately state the applicable law, and

> (c) they are requested by a party.

> (3) Whenever a committee recommends that no instruction be given on a particular matter, the court shall not give an instruction unless it specifically finds for reasons stated on the record that

> (a) the instruction is necessary to state the applicable law accurately, and

> (b) the matter is not adequately covered by other pertinent model jury instructions.

Accordingly, defendant has not shown that the trial court abused its discretion by providing the instruction concerning contributory negligence instead of the instruction concerning intervening causes. See *Dobek*, 274 Mich App at 82.

-10-

## 3. PROXIMATE CAUSE

Defendant next asserts that his conduct was not a proximate cause of the Shaffers' deaths because there was evidence that Joel did not come to a complete stop before entering the intersection and pumped his brakes while in the intersection. This argument amounts to a challenge to the sufficiency of the evidence on the element of proximate causation.

When reviewing a sufficiency-of-the-evidence claim, this Court's review is de novo. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*. "Further, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Bennett*, 290 Mich App at 472. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime," and "[c]onflicts in the evidence must be resolved in favor of the prosecution." *Id*. (quotation marks and citation omitted).

Our Supreme Court has explained that causation in the criminal law context comprises both "factual causation and proximate causation." *People v Feezel*, 486 Mich 184, 194; 783 NW2d 67 (2010). "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Id*. at 194-195 (citation omitted). Even if factual causation is established, the prosecution must also prove that the defendant's conduct was a "proximate cause" of the accident or the victim's death before a defendant may be held criminally liable for the offense of operating while intoxicated causing death. *Id*. at 193, 195. Proximate causation has a somewhat technical meaning:

> Proximate causation "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." If the finder of fact determines that an intervening cause supersedes a defendant's conduct "such that the causal link between the defendant's conduct and the victim's injury was broken," proximate cause is lacking and criminal liability cannot be imposed. Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. Ordinary negligence is considered reasonably foreseeable, and it is thus not a superseding cause that would sever proximate causation. In contrast, "gross negligence" or "intentional misconduct" on the part of a victim is considered sufficient to "break the causal chain between the defendant and the victim" because it is not reasonably foreseeable. Gross negligence, however, is more than an enhanced version of ordinary negligence. "It means wantonness and disregard of the consequences which may ensue . . . ." "Wantonness" is defined as "[c]onduct indicating that the actor is aware of the risks but indifferent to the results" and usually "suggests a greater degree of culpability than recklessness . . . ." Therefore, while a victim's negligence is not a defense, it is an important factor to be considered by the trier of fact in determining whether proximate cause has been proved beyond a reasonable doubt. [*Id*. at 195-196 (citations omitted; ellipses and alteration in original).]

-11-

"For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a 'direct and natural result' of the defendant's actions." *People v Schaefer*, 473 Mich 418, 436; 703 NW2d 774 (2005), holding mod in part on other grounds by *People v Derror*, 475 Mich 316, 334; 715 NW2d 822 (2006) (citation omitted), overruled in part on other grounds by *Feezel*, 486 Mich at 205. Accordingly, "a proximate cause is simply a factual cause of which the law will take cognizance." *Schaefer*, 473 Mich at 436 (quotation marks and citation omitted).

In this case, viewing the evidence in the light most favorable to the prosecution, the evidence showed that Joel stopped at the intersection and then proceeded to enter the intersection when defendant's vehicle was far enough away that the Shaffers' vehicle would have made it safely through the intersection had defendant been traveling at or below the speed limit instead of traveling 115 miles per hour. Moreover, there was also evidence that it would have been difficult from Joel's vantage point to ascertain that defendant was speeding. If Joel engaged the Impala's brakes, it may have been a reflexive attempt to avoid the collision. A rational trier of fact could have found beyond a reasonable doubt from this evidence that the Shaffers' deaths were the direct and natural result of defendant's driving at an extremely high speed through a flashing yellow light and that any potential contribution to the accident by Joel was not the result of any more than ordinary negligence such that it was not a superseding cause cutting off defendant's liability. *Feezel*, 486 Mich at 193-196; *Schaefer*, 473 Mich at 436.[6]

In this case, the Shaffers' deaths were a direct and natural result of defendant's operation of the vehicle. He was driving 115 miles an hour on a divided highway that intersected with other streets. Moreover, any alleged contributory negligence on the part of Joel was reasonably foreseeable. Defendant's contention that Joel failed to stop at the intersection before proceeding is not supported by the record. Noel testified that he saw the Shaffers' vehicle stopped at the red blinking light before defendant passed him at a high rate of speed. In any event, it was foreseeable that given defendant's speed, a driver would fail to see defendant and pull into his path of travel and defendant would be unable to stop. Moreover, Joel engaging the Impala's brakes may have been a reflexive attempt to avoid the collision. Accordingly, Joel's actions were not an intervening, superseding cause that was sufficient to break the causal chain between defendant's conduct and the Shaffers' deaths. Therefore, defendant's conduct was a proximate cause and his criminal responsibility was not eliminated. See *Schaefer*, 473 Mich at 437-438.

### 4. GUIDELINES SCORING

Finally, defendant challenges the scoring of OV 5, OV 12, OV 16, OV 17, and OV 18. However, even if defendant is correct that some of these variables were improperly assessed, the error does not affect the recommended guidelines range and defendant is not entitled to resentencing.

"A claim that the sentencing guidelines range was improperly calculated is preserved by raising the issue at sentencing, in a motion for resentencing, or in a motion to remand." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). On

---

[6] Defendant does not appear to contest factual causation or any of the other elements of his offenses for which he was convicted.

appeal, defendant challenges the scoring of OV 5, OV 12, OV 16, OV 17, and OV 18. He objected to the scoring of OV 16 and OV 17 at sentencing. However, his objection to the scoring of OV 16 was based on a different argument than the one he raises on appeal. An objection in the trial court based on one ground "is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Defendant also failed to raise any challenge to the scoring of OV 5, OV 12, and OV 18. As a result, defendant's claim concerning the scoring of OV 17 is preserved, and his claims involving OV 5, OV 12, OV 16, and OV 18 are not preserved. *Sours*, 315 Mich App at 348; *Stimage*, 202 Mich App at 30.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

"Unpreserved sentencing errors are reviewed for plain error affecting substantial rights." *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005). On plain error review, the defendant has the burden to demonstrate that 1) an error occurred, 2) that was clear or obvious, 3) and affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

As an initial matter, we note that defendant has merely provided a single sentence assertion of error for each OV without any developed argument or legal authority to support his assertions. We thus could consider these arguments abandoned. *Payne*, 285 Mich App at 195. Nonetheless, we provide the following analysis for the sake of completeness.

OV 5

Defendant asserts that the trial court erred by assessing 15 points for OV 5 because there was no psychological injury to any of the Shaffers' family members.

"OV 5 is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *People v Baskerville*, 333 Mich App 276, 292; 963 NW2d 620 (2020) (quotation marks and citation omitted). A court is to assess 15 points for OV 5 if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). The statute further instructs: "Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.35(2). This Court has explained:

> "In this context, 'serious' is defined as 'having important or dangerous possible consequences.' " "[I]n scoring OV 5, a trial court should consider the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received." [*Baskerville*, 333 Mich App at 292 (citations omitted; alteration in original).]

Moreover, "OV 5 does not require proof that a victim's family member has already sought or received, or intends to seek or receive, professional treatment. Rather, [p]oints are also properly assessed when the serious psychological injury may require professional treatment in the future, regardless of whether the victim's family member presently intends to seek treatment." *Id*. at 293 (quotation marks and citations omitted; alteration in original).

In this case, three family members provided emotional victim impact statements at defendant's sentencing. The Shaffers' son provided the following statement about finding out that his parents were killed in a car crash:

> I instantly doubled over in pain and emotion. Processing this was hard enough, but then I realized I had to tell my sisters, and other family members what I just heard, which made me physically sick to my stomach. This was one of the hardest things I've had to do in my 1ife, and do not wish it on my worst enemy.
>
> The tragedy of a terrible car crash is hard enough, but to know that it was caused by a person that acted maliciously, irresponsibility and selfish way is almost to [sic] much.
>
> *  *  *
>
> However, [defendant], you have always made it impossible to forget the images of my parents' car and the total devastation of the crash you caused that day.
>
> The good memories, hopefully, will prevail, but the nightmare of that day will never go away. You took my parents, but you'll never take my memories.

The Shaffers' daughter also provided a poignant statement:

> The loss of my parents so suddenly, violently, and so preventable is a deep visceral pain and heartache and it's difficult to put into words. Not a day goes by that I do not think about them, miss them, and love them deeply.
>
> The images of the accident scene are horrific. The description of the injuries are [sic] beyond what my imagination conjured even though I knew they were crushed to death. The car mangled and shattered beyond recognition. Crushed in half. Hearing the heart wrenching sobs of my children on the phone telling them their beloved grandmother and grandfather's death is a sound you never forget.
>
> You cannot shut out the pictures of the accident or your imagination of what they experienced in the crash.
>
> At the funeral home, the appearance of my father was not the man I recognized as my father. The mortician did the best, I'm sure, that he could. But, he informed us that the hands and arms of my parents that expressed so much of their physical love and labors were too crush [sic] to—to be displayed. We could

-14-

not see them. I could not touch their hands or their arms as I planned to have that cont—last contact with.

Touching my father's chest, I knew they used filling to make a supposed natural look. His facial features were not his. My mother had to have her face averted, because of the large gash on her cheek. These are the last images of my parents that you left me.

Their house is only a mile away from mine and I saw them often. I live just a few miles away from the scene where they were murdered. It's an area where I must periodically encounter due to the proximity to me, and it hurts my heart each time.

Considering the "nature and descriptions of the psychological effects" of the Shaffers' deaths on their family members, there was sufficient evidence "to establish that even if professional treatment had not yet been sought, it may be necessary in the future." *Id*. As a result, the trial court did not plainly err by assessing 15 points for OV 5. *Id*. at 294.

OV 12

Defendant also challenges the five-point score for OV 12. MCL 777.42 governs OV 12 and provides that five points may be assessed if "[o]ne contemporaneous felonious criminal act involving a crime against a person was committed" or "[t]wo contemporaneous felonious criminal acts involving other crimes were committed." MCL 777.42(1)(d) and (e). For purposes of this statute, a felonious criminal act is "contemporaneous" if "[t]he act occurred within 24 hours of the sentencing offense" and "[t]he act has not and will not result in a separate conviction." MCL 777.42(2)(a). However, "[w]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v Abbott*, 330 Mich App 648, 654-655; 950 NW2d 478 (2019) (quotation marks and citation omitted).

In this case, OV 12 was not specifically addressed at sentencing or in the presentence investigation report, and the basis for the five-point score is somewhat unclear. Nonetheless, even if OV 12 was incorrectly scored, removal of the five points would not alter the recommended sentencing range. Defendant was convicted of two counts of operating while intoxicated causing death, which is designated a Class C offense. See MCL 777.12f. His total OV score of 110 points and his total PRV score of 75 points placed him in OV Level VI and PRV Level F. See MCL 777.64. Even if defendant's OV score was reduced to 105 points, he would remain at OV Level VI because OV scores of 75 points or more fall into OV Level VI. MCL 777.64. Defendant's guidelines range would therefore remain the same. As a result, because the scoring error would not alter the recommended minimum guidelines range, defendant has not shown that he is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

OV 16

Defendant also believes that OV 16 was improperly assigned five points. He is correct. OV 16 involves property obtained, damaged, lost, or destroyed. MCL 777.46(1). There is no

dispute that the Shaffers' vehicle was completely destroyed by the accident. However, OV 16 should only be assessed for an offense against a person if the sentencing offense is a violation or attempted violation of MCL 750.110a (home invasion). *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). See also MCL 777.22(1). Because the sentencing offense in this case constituted a crime against a person, see MCL 777.12f, and did not involve a completed or attempted home invasion, the trial court erred by assessing any points to OV 16. Nonetheless, as discussed earlier, the removal of the five points would not affect the recommended minimum guideline range and defendant has not shown that he is entitled to resentencing. See *Francisco*, 474 Mich at 89 n 8. This conclusion holds true even if we consider the scoring of both OV 12 and OV 16 to be erroneous because defendant's OV score would still exceed 75 points. *Id.*; MCL 777.64.

## OV 17

Defendant additionally challenges the 10-point score the trial court assessed for OV 17. OV 17 concerns the degree of negligence exhibited during the offense. MCL 777.47(1). The court should assess 10 points for OV 17 if "[t]he offender showed a wanton or reckless disregard for the life or property of another person." MCL 777.47(1)(a). According to MCL 777.22(1), OV 17 is to be scored for an offense against a person "if the offense or attempted offense involves the operation of a vehicle . . . ."

In this case, there was evidence that defendant was driving 115 miles an hour in area with a 55-mile-an-hour speed limit, and he had a blood alcohol content of 0.167. He was on probation for a previous operating while intoxicated offense at the time of the offense. Defendant's conduct demonstrated an indifference to the results of his actions and to the safety of other drivers or pedestrians on the roadway, thereby showing a wanton or reckless disregard for the life or property of another person. It is difficult to conclude otherwise given the facts of this case. Therefore, the trial court properly assessed 10 points for OV 17.

## OV 18

Finally, defendant challenges the scoring for OV 18. OV 18 is "operator ability affected by alcohol or drugs." MCL 777.48. According to MCL 777.22(1), OV 18 is also to be scored for an offense against a person "if the offense or attempted offense involves the operation of a vehicle . . . ." The trial court assessed OV 18 at 15 points. According to MCL 777.48(1)(b), a score of 15 points is proper if "[t]he offender operated a vehicle . . . when his or her bodily alcohol content was 0.15 grams or more but less than 0.20 grams per 100 millimeters of blood . . . ." In this case, the results of a blood draw showed that defendant's blood alcohol content was 0.167 grams per 100 millimeters of blood. Therefore, the 15-point score was proper.

Defendant nevertheless asserts on appeal that there was no way to know his blood alcohol content at the time of the accident because the blood draw was taken hours later. However, according to MCL 257.625a(6)(a),

> The amount of alcohol or presence of a controlled substance or other intoxicating substance in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's

blood, urine, or breath is admissible into evidence in any civil or criminal proceeding and is presumed to be the same as at the time the person operated the vehicle.

In addition, the evidence showed that defendant's blood draw occurred within two hours of the crash. Defendant does not explain how his blood alcohol content would have been lower at the time of the collision. Accordingly, defendant has not shown that the 15-point score for OV 18 was erroneous.

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick