*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN

Plaintiff-Appellee,

v

KELVIN DAVID MOFFIT,

Defendant-Appellant.

UNPUBLISHED
April 21, 2025
2:08 PM

No. 366179
Missaukee Circuit Court
LC No. 2022-003366-FH

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

PER CURIAM.

Defendant, Kelvin David Moffit, appeals as of right his jury-trial convictions of: (1) third-degree fleeing and eluding, MCL 257.602a(3)(a); (2) operating a vehicle without security, MCL 500.3102; (3) operating a vehicle without registration, MCL 257.215; and (4) assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Moffit was convicted as a fourth-offense habitual offender, MCL 769.12, of third-degree fleeing and eluding and assaulting, resisting, or obstructing a police officer. The trial court sentenced Moffit to concurrent terms of 48 to 180 months' imprisonment for third-degree fleeing and eluding, 24 to 180 months' for assaulting, resisting, or obstructing a police officer, and 90 to 219 days' credit for time served for operating a vehicle without security and operating a vehicle without registration.

On appeal, Moffit argues: (1) his Sixth Amendment right to a unanimous jury verdict was violated because the jury was not provided a specific unanimity instruction regarding which collision satisfied the elements of fleeing and eluding, and defense counsel was ineffective for failing to request the specific unanimity instruction;[1] (2) the trial judge's conduct pierced the veil of impartiality because he appeared to favor the prosecution; (3) the trial court prevented Moffit from presenting a complete defense when it found his testimony of his purported kidnapper's name

---

[1] We note Moffit has not raised a double jeopardy challenge to a potentially duplicitous charge. See *People v Oliphant*, 399 Mich 472, 513 n 16; 250 NW2d 443 (1976) (LEVIN, J., dissenting) ("The law prohibits the filing of a duplicitous information because it recognizes the difficulty of defending against multiple charges.").

was inadmissible hearsay; and (4) the trial court failed to comply with the requirements of waiver of counsel at sentencing, rendering his waiver invalid. We agree in part. We affirm his third-degree fleeing and eluding conviction. But we vacate his sentences due to the defective waiver of counsel and remand to the trial court for resentencing.

## I. BACKGROUND

This case arises out of Moffit's conduct on the evening of September 23, 2022. Detective Daylen Garver was parked and "noticed a tan in color four-door sedan[]" drive past his location. Garver followed the vehicle and it quickly accelerated, traveling far beyond the speed limit. Garver activated his overhead lights and observed the vehicle ignore two stop signs. At one point, as Garver approached an intersection, he noticed "a line of cars starting to form" on the highway. Garver stopped because "someone had gotten rear-ended there."

Devin Nolan was involved in this collision. He stated, "we saw a car heading east that blew right through the stop sign." Nolan "slowed down" because he "saw lights shining through the little tree line" and "ended up getting rear-ended." Jarod Blevins was the driver that rear-ended Nolan. Blevins "saw police lights and this guy run through two stop signs." He watched the pursuit, saw brake lights ahead, but was unable to stop in time, and rear-ended Nolan.

Garver continued his pursuit and noticed skid marks on the road and the vehicle in a ditch. The vehicle had collided with a tree. When other officers arrived, they heard what sounded like a person running through the neighboring swamp. Officers searched the area and found Moffit hidden among the shrubs and arrested him. After his arrest, Moffit told the officers he fled because his vehicle lacked plates and insurance and stated several times he was the only person in the vehicle. The prosecution charged him with four counts: third-degree fleeing and eluding, operating a vehicle without security, operating a vehicle without registration, and assaulting, resisting, or obstructing a police officer.

Moffit's jury trial followed. During voir dire, the trial court asked the prospective jurors: "does anyone know [defense counsel] personally? She's fairly new to our area, and I know lives over in Wexford County." The prospective jurors did not reply. The trial court added: "[The prosecutor] has been here for several—I'm sorry—several years. We normally get a couple of people who know [the prosecutor]. Does anyone know [the prosecutor] personally?" When none of the prospective jurors replied, the trial court stated: "Well, I think that's a first in any of our cases, [prosecutor]. There's always—normally, someone's gone to church with [the prosecutor]. All right. Does anyone know [the prosecutor] professionally? He's been an attorney now—close to ten years?" The prospective jurors did not respond. Voir dire continued and the jury was impaneled.

During his opening statement, the prosecutor stated:

*In this case, the People are alleging that there were actually two collisions.* Ultimately, when the Defendant fled from law enforcement he ended up hitting a tree. That was the first collision. The People are also alleging that during the course of this pursuit, two other separate vehicles were involved in a collision that had stopped for the police officer and the Defendant as the Defendant fled.

-2-

The prosecutor added:

As I mentioned, there was actually two collisions. One, the collision that the People allege the Defendant was involved with in hitting the tree. A second one in terms of two—there was actually four, but two drivers in two separate vehicles that were involved in a collision when they stopped because of this pursuit.

Moffit testified. He stated he was driving his sister's car. Moffit claimed he was being stalked at his camper by people he did not know. He noted there were two people at his camper the night before the incident. He heard a lady say: "What are we doing here?" Before recounting what the man said in response, the prosecution objected to hearsay. The trial court stated: "Objection to hearsay. Objection to narrative. Sustained." The trial court did not provide the defense an opportunity to respond to the prosecutor's objection.

On the night of the incident, Moffit stated he went out to the car to fix its battery. "I reached the back seat of the vehicle to put the positive cable on, and here was a white male with brown hair, dark brownish-black hair, had a pistol. He says, 'I'm (inaudible). Get me the fuck out of here.'" "I closed the door . . . got in the driver's seat of that car, started it up and put it in drive and start driving . . . ." "I was terrified. I didn't know what the heck was going on." Moffit did not speak with his assailant. The person in the car "was giving me commands and yelling 'Drive. Get me the hell out of here.' His words, you know." The prosecutor objected to hearsay and defense counsel stated "I don't have a response, your Honor." The trial court noted the assailant's statement was admissible under "effect on the listener" and overruled the prosecutor's objection.

Moffit reiterated his assailant held the gun to his head while he was driving. He attempted to relate what his assailant said. The prosecutor objected to hearsay. The trial court stated: "It's going to go to the effect on the listener[]" and overruled the objection.

The following exchange occurred regarding the identity of Moffit's assailant:

*Defense Counsel*: Do you know who held you at gunpoint?

*Moffit*: I do not know, and I didn't know at that time until months later in the Missaukee County Jail.

*Defense Counsel*: How do you—okay—and how do you know—

*The Prosecutor*: Objection to hearsay, your Honor.

*The Trial Court*: Hold on.

*Defense Counsel*: He hasn't answered the question.

*The Trial Court*: He's going to answer the next question. [Moffit], how, without saying the name, how is it that you know what the name is?

*Moffit*: I received a postcard from an individual, sir.

> *The Trial Court*: Stop.  Now, next, [prosecutor], now comes your objection to hearsay.
>
> *The Prosecutor*: Yes, your Honor.  Same objection.
>
> *The Trial Court*: Bingo.  Sustained.

After Moffit's testimony, the defense rested.  Neither party challenged the jury instructions.  In terms of the third-degree fleeing and eluding charge, the trial court instructed the jury they were required to find "the violation resulted in a collision or accident."  Moffit was convicted of all charges.

At his sentencing hearing, Moffit stated: "At this time, I want to get rid of my attorney . . . ."  He added: "I'm going to represent myself.  I want her gone."  The trial court asked if Moffit was choosing to represent himself.  Moffit replied: "Yes.  Knowingly, voluntarily, and intelligently, sir."  The trial court inquired: "Sir, do you understand that you have the right to be represented by an attorney at a sentencing hearing?"  Moffit replied: "I do."  The trial court continued: "Okay.  And sir, do you understand that an attorney could potentially apply their experience, their licenses, and try to provide you representation, maybe get you a better result, maybe not, but they could do that?"  Moffit answered: "I understand that."  The trial court added: "And are you willing to waive that right to have [representation?]"  Moffit confirmed he was willing to waive counsel and was sentenced as previously discussed.  Moffit appealed.

While this appeal was pending, Moffit moved for a new trial or evidentiary hearing, arguing the trial court erred by not giving the jury a specific unanimity instruction because the prosecution presented two materially distinct collisions.  Further, Moffit argued defense counsel was ineffective for failing to request this instruction.  The trial court denied Moffit's motion.  This appeal followed.

## II.  UNANIMITY INSTRUCTION

Moffit argues he was denied the right to a unanimous verdict because the trial court did not provide the jury a specific unanimity instruction.  Alternatively, Moffit contends defense counsel was ineffective for failing to request this instruction.  Moffit waived his first argument because defense counsel expressly stated she had no objections to the jury instructions.  "When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions."  *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).  "A party's explicit and express approval of jury instructions as given waives any error and precludes appellate review."  *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020).  Moffit's alternative argument that defense counsel was ineffective fails because defense counsel's failure to request the unanimity instruction fell below an objective standard of reasonableness, but Moffit cannot establish that the deficiency affected the outcome.

"A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law."  *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted).  "When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of

law." *Id*. at 671-672. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672.

Criminal defendants are guaranteed the right to a unanimous jury verdict. US Const, Am VI; Const. 1963, art 1, § 14; see *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014); see also *Andres v United States*, 333 US 740, 748; 68 S Ct 880; 92 L Ed 1055 (1948) ("Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply. In criminal cases this requirement of unanimity extends to all issues—character or degree of the crime, guilt and punishment—which are left to the jury."). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *Chelmicki*, 305 Mich App at 67-68 (quotation marks and citation omitted). "Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity." *Id*. at 68. "However, a specific unanimity instruction may be required in cases in which more than one act is presented as evidence of the *actus reus* of a single criminal offense and each act is established through materially distinguishable evidence that would lead to juror confusion." *Id*. (quotation marks and citation omitted).

Our Supreme Court stated:

[A] specific unanimity instruction is not required in *all* cases in which more than one act is presented as evidence of the actus reus of a single criminal offense. The critical inquiry is whether either party has presented evidence that materially distinguishes any of the alleged multiple acts from the others. In other words, where *materially* identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice. [*People v Cooks*, 446 Mich 503, 512-513; 521 NW2d 275 (1994) (citation omitted).]

Moffit was convicted of third-degree fleeing and eluding under MCL 257.602a(3)(a). This Court has held:

there are six elements necessary to establish third-degree fleeing and eluding: (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law . . . . [*People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999).]

Moffit argues he was entitled to a specific unanimity instruction because the prosecution presented two different collisions to satisfy the sixth element of third-degree fleeing and eluding.[2] We agree.

Our Supreme Court has outlined the circumstances where a specific unanimity instruction is required. In *Cooks*, 446 Mich at 512-513, our Supreme Court held, "where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice." But a specific unanimity instruction is required "if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt." *Id*. at 530. Importantly, alternative acts are materially distinct "where the acts themselves are materially distinct or where either party has offered materially distinct proofs regarding one of the alternatives . . . ." *Id*. at 524. Put differently, if jurors might disagree on the material facts satisfying the elements of the charge, then a unanimity instruction is required. Cf. *id.* at 530.

There is also a "continuous course of conduct exception to the need for a unanimity instruction." *Id*. at 522 (quotation marks and citation omitted; alteration in original). "The continuous conduct exception occurs in two circumstances-when the two offenses are so closely connected in time that they form part of one transaction or when the offense consists of a continuous course of conduct." *Id*. (citation omitted).

Here, one of the elements of third-degree fleeing and eluding is "[Moffit's] conduct must have *resulted* in an accident or collision . . . ." *Grayer*, 235 Mich App at 741 (emphasis added). Throughout these proceedings, the prosecutor referred to two collisions. These collisions are distinct because they required the jury to make different findings regarding causation.

In third-degree fleeing and eluding, "the prosecution was required to prove causation beyond a reasonable doubt for" the collision element. *People v Feezel*, 486 Mich 184, 193; 783 NW2d 67 (2010). An element is Moffit's conduct *results* in a collision. "In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause." *People v Schaefer*, 473 Mich 418, 435; 703 NW2d 774 (2005) (footnote omitted). "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Feezel*, 486 Mich at 194-195. "For a defendant's conduct to be regarded as a proximate cause, the [collision] must be a 'direct and natural result' of the defendant's actions." *Schaefer*, 473 Mich at 436. "In making this determination, it is necessary to examine whether there was an intervening cause that superseded the defendant's conduct such

---

[2] Moffit cites to two unpublished opinions from this Court in support of his argument. "Unpublished opinions are not binding, but may be persuasive." *People v Daniels*, 311 Mich App 257, 268 n 4; 874 NW2d 732 (2015). *People v Dunn*, unpublished per curiam opinion of the Court of Appeals, issued October 6, 2022 (Docket No. 356026) and *People v Westfield*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2022 (Docket No. 355578) support Moffit's argument he was entitled to a specific unanimity instruction because the prosecution presented two materially distinct collisions to establish the *actus reus* of third-degree fleeing and eluding.

that the causal link between the defendant's conduct and the [collision] was broken." *Id.* at 436-437.

The prosecutor presented two collisions, which he labeled "first" and "second." This labeling was not according to the temporal order the collisions occurred. In the "first" collision, Moffit skidded off the road and struck a tree. None of the witnesses saw the collision occur. Garver stated he did not see Moffit drive off the road. Likewise, officers saw the fallout of "second" collision after it occurred; however, the passengers involved in the collision testified about how it occurred. On this basis, materially distinguishable evidence was required to establish each collision. See *Cooks*, 446 Mich at 524.

In the first collision, the jury needed to infer from the officers' testimony that Moffit drove the car off the road into a tree. In the second collision, the jury needed to infer Moffit's flight from Garver *caused* Blevins to rear-end Nolan, *and*, that Nolan slowing down on the highway and Blevins not stopping in time did not break the causal chain. In other words, the collisions are conceptually distinct. *Id.* If six jurors accepted the officers' inferences regarding the first collision, but thought Blevins's inattention caused him to rear-end Nolan, and six jurors rejected the officers' testimony, but thought Moffit caused the second collision, then the jury would convict Moffit on the same charge with different underlying material facts. As a result, Moffit should have received a specific unanimity instruction.

Because Moffit waived the issue regarding instructional error, the issue is whether defense counsel was ineffective for failing to request the unanimity instruction. We conclude that her performance was defective, but that did not result in prejudice due to the high-confidence evidence that Moffit caused the second wreck.

The United States and Michigan Constitutions protect a defendant's right to a fair trial. US Const, Am VI; Const 1963, art 1, § 17. "This right includes the right to the effective assistance of counsel." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). An ineffective-assistance-of-counsel claim has two parts: (1) deficiency and (2) prejudice. *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010) ("To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense."). Regarding the first prong, deficiency, "[trial] counsel's performance was deficient if it fell below an objective standard of professional reasonableness." *Id.* The second prong, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Leffew*, 508 Mich 625, 673; 975 NW2d 896 (2022) (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"Claims of ineffective assistance of counsel center on deficiencies in the defense counsel's decision-making . . . ." *Isrow*, 339 Mich App 532 (quotation marks and citation omitted; alteration in original). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "If counsel's strategy is reasonable, then his or her performance was not

deficient." *Isrow*, 339 Mich App at 532 (quotation marks and citation omitted). "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id*.

Defense counsel's conduct fell below an objective standard of reasonableness. See *Fyda*, 288 Mich App at 450. A specific unanimity instruction was required because the prosecution alleged two materially distinct collisions. We discern no valid strategy in defense counsel's failure to request a unanimity instruction or her decision not to object to the proposed instructions.

Despite this defective performance, Moffit's ineffective-assistance-of-counsel claim fails for want of prejudice. We acknowledge, as we must, that it is impossible to determine if the jury was unanimous regarding which collision supported the conviction, as the prosecution argued that either or both could support a conviction. Nonetheless, there was largely undisputed evidence supporting Moffit's conviction related to the second wreck.[3] As a result, we find no reason to disturb his conviction of third-degree fleeing and eluding on this basis.

## III. JUDICIAL BIAS

Next, Moffit argues the trial judge was biased and lacked impartiality because he appeared to favor the prosecutor during voir dire and throughout trial. We disagree. Moffit did not overcome his burden of establishing the trial judge was biased or lacked impartiality. To preserve a claim of judicial bias, a party must raise the claim before the trial court. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Because Moffit did not raise this issue before the trial court, this issue is unpreserved and subject to plain-error analysis. *People v Hines*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 363151); slip op at 6.

To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—usually meaning that the error affected the outcome of the proceedings. *Id*. at ___; slip op at 6. "If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*. at ___; slip op at 6. (citation omitted). This last step conceptually overlaps with the third prong. *People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law [.]" US Const, Am XIV; see also Const 1963, art 1 § 17. A person is entitled to due process of law before being deprived of their liberty. This right guarantees "a defendant in a criminal trial has a right to a neutral and detached judge. . . ." *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). In other words, "[d]ue process requires that an unbiased and impartial decision-maker

---

[3] Regarding the first wreck, there was conflicting evidence on whether Moffit was the proximate cause of the wreck, rather than distracted drivers failing to notice slowing or stopped traffic. The second wreck, however, involved only Moffit, and it is difficult to dispute that his driving caused the wreck. This is consistent with the jury's ostensible rejection of his duress argument.

hear and decide a case." *People v Loew*, 340 Mich App 100, 110-111; 985 NW2d 255 (2022) (quotation marks and citation omitted). "The right to an impartial judge is so fundamental that without [this] basic protection[ ], a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *People v Stevens*, 498 Mich 162, 179; 869 NW2d 233 (2015) (quotation marks and citation omitted; alterations in original).

"A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 598 (quotation marks and citation omitted). "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 170. This Court applies the following analysis in determining whether a trial judge's conduct deprived the defendant of a fair trial:

> Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial. [*Jackson*, 292 Mich App at 598 (quotation marks and citation omitted).]

MCR 2.003(C)(1) requires disqualification of a judge if there is actual bias or when there are reasonable and objective perceptions of what appears to be judicial impropriety. The court rule states, in relevant part:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party . . . or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct. [MCR 2.003(C)(1); see also *People v Aceval*, 486 Mich 887, 888-889; 781 NW2d 779 (2010).]

"The test for determining whether there is an appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Id*. at 889.

First, Moffit argues the trial judge's conduct during voir dire was biased toward the prosecution. We disagree.

During voir dire, the trial court asked the prospective jurors: "does anyone know [defense counsel] personally? She's fairly new to our area, and I know lives over in Wexford County." The prospective jurors did not respond. The trial court added: "[The prosecutor] has been here for several—I'm sorry—several years. We normally get a couple of people who know [the

prosecutor]. Does anyone know [the prosecutor] personally?" When none of the prospective jurors replied, the trial court stated: "Well, I think that's a first in any of our cases, [prosecutor]. There's always—normally, someone's gone to church with [the prosecutor]. All right. Does anyone know [the prosecutor] professionally? He's been an attorney now—close to ten years?"

"The function of voir dire is to elicit sufficient information from prospective jurors to enable the trial court and counsel to determine who should be disqualified from service on the basis of an inability to render decisions impartially." *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996). "In ensuring that voir dire effectively serves this function, the trial court has considerable discretion in both the scope and conduct of voir dire." *Id*. This Court has held, "trial courts must be allowed wide discretion in the *manner* they employ to achieve the goal of an impartial jury." *Id*. at 186-187 (quotation marks and citation omitted).

The record does not support Moffit's contention that the trial judge's comments resulted in error, let alone plain error affecting Moffit's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The trial judge's questions regarding the prosecutor and defense counsel were aimed toward assessing the prospective jurors' familiarity with the attorneys. Given the small size of the community in which the trial was held, the trial judge needed "to elicit sufficient information from prospective jurors to enable the trial court and counsel to determine who should be disqualified from service on the basis of an inability to render decisions impartially." *Sawyer*, 215 Mich App at 186. Moffit has failed to establish the trial judge's comments regarding defense counsel being new to the area, and the prosecutor being known at church, unduly influenced the jury.

Second, Moffit argues the trial judge displayed bias during his testimony. This argument also fails on the first prong of the plain-error analysis.

MRE 611(a) allows the trial judge "to exercise reasonable control over the mode and order of examining witnesses" in order to "make those procedures effective for determining the truth" and "avoid wasting time . . . ." Further, the trial judge "may examine a witness regardless of who calls the witness." MRE 614(b). Our Supreme Court has held "it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173.

During his testimony, Moffit stated his assailant "was giving me commands and yelling 'Drive. Get me the hell out of here.' His words, you know." The prosecutor objected to hearsay and defense counsel had no response. The trial court noted the assailant's statement was admissible under "effect on the listener" and overruled the prosecutor's objection. In an exchange that followed, the prosecutor objected on grounds of speculation, and the trial court sustained the objection on leading. Next, Moffit claimed his assailant held the gun to his head while he was driving. He attempted to relate what his assailant said. The prosecutor objected to hearsay. The trial judge stated: "It's going to go to the effect on the listener[]" and overruled the objection. The following exchange occurred regarding the identity of Moffit's assailant:

*Defense Counsel*: Do you know who held you at gunpoint?

*Moffit*:  I do not know, and I didn't know at that time until months later in the Missaukee County Jail.

*Defense Counsel*: How do you—okay—and how do you know—

*The Prosecutor*: Objection to hearsay, your Honor.

*The Trial Court*: Hold on.

*Defense Counsel*: He hasn't answered the question.

*The Trial Court*: He's going to answer the next question.  [Moffit], how, without saying the name, how is it that you know what the name is?

*Moffit*: I received a postcard from an individual, sir.

*The Trial Court*: Stop.  Now, next, [prosecutor], now comes your objection to hearsay.

*The Prosecutor*: Yes, your Honor.  Same objection.

*The Trial Court*: Bingo.  Sustained.

On cross-examination, Moffit claimed he lied to officers after his arrest.  Although he did not know his assailant's name, he described him as "a white male, a shorter guy."  Moffit began to narrate how he received information while he was in jail.  The trial judge, without an objection by defense counsel, stated: "Non-responsive.  Sustained."

Our Supreme Court has explained: "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171 (footnote omitted).  In this matter, although the trial judge's guiding the attorneys was unorthodox, it did not pierce the veil of impartiality because his conduct was directed at both parties.  For example, he overruled the prosecutor's objections, in favor of Moffit, even when defense counsel did not respond to the objection.  Because the trial judge's behavior was balanced, it did not create "the appearance of advocacy or partiality against a party."  *Id*.  Further, the trial judge instructed the jury his "comments, rulings, questions, and instructions are . . . not evidence."  "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted).  Because Moffit failed to establish an error, let alone a plain error, we find no basis to vacate his convictions for judicial bias.

## IV.  COMPLETE DEFENSE

Next, Moffit argues the trial court prevented him from presenting a complete defense because it did not permit him to relate the identity of his kidnapper.  He contends that the trial court erroneously found the kidnapper's name was inadmissible hearsay.  We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Moffit did not object to the trial court's hearsay ruling, resulting in the issue being unpreserved. Generally, "[a] trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Thorpe*, 504 Mich at 251. However, unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

"Under the Due Process Clause of the Fourteenth Amendment criminal prosecutions must comport with prevailing notions of fundamental fairness. [This Court] [has] long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *People v Aspy*, 292 Mich App 36, 48-49; 808 NW2d 569 (quotation marks, footnote, and citation omitted); US Const, Am XIV. "However, an accused's right to present evidence in his defense is not absolute." *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. (quotation marks and citation omitted; alteration in original). "States have been traditionally afforded the power under the constitution to establish and implement their own criminal trial rules and procedures." *Id*. "Michigan has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials." *Id*. Indeed, "[o]ur state has broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Id*. at 250-251 (quotation marks and citation omitted). In other words, "[e]videntiary errors are nonconstitutional." *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008).

Moffit challenges the trial court's finding the name of his assailant was inadmissible hearsay. Hearsay is an out-of-court statement offered to "prove the truth of the matter asserted." MRE 801(c).[4] A statement is "an oral or written assertion . . . if it is intended by the person as an assertion." MRE 801(a). An assertion is capable "of being true or false." *People v Jones (On Rehearing After Remand)*, 228 Mich App 191, 204; 579 NW2d 82 (1996) mod in part on other grounds 458 Mich 862 (1998).

Moffit stated he received a postcard while in jail, several months after the incident, which informed him of the name of his assailant. The assailant's name was an assertion because it was capable of being true or false. *Id*. Further, Moffit sought to admit the name for the truth of the matter asserted, namely, to establish the identity of his assailant. In *People v Herndon*, 246 Mich App 371, 410; 633 NW2d 376 (2001), this Court held the trial court properly excluded a letter in which an inmate "wrote reporting to investigators that he had overheard someone say that he (this other inmate) ought to kill [the victim], evidently before the murder." Like in *Herndon*, the name of Moffit's assailant on the post card was inadmissible hearsay.

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of Moffit's trial.

In *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973), the United States Supreme Court cautioned against blanket hearsay exclusions, holding "[i]n these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." This matter is not one of those circumstances.

Moffit was still able to present to the jury his theory he was acting under duress. He recounted hearing voices outside his trailer, and being kidnapped at gunpoint when he went to check the car's battery. He described the physical characteristics of his assailant, his demeanor, and the threats made against Moffit and his sister. Further, defense counsel questioned the officers about the investigation, including whether there was anyone else in the vehicle with Moffit or in the swamp. The only information missing from Moffit's defense was the name of his assailant, and he does not explain how naming the assailant would make a difference. Further, after his arrest, Moffit informed the police he ran because his vehicle had "no plates and insurance . . . ." Moffit's statements weigh against the him being prejudiced by the alleged evidentiary error. The postcard from which he learned the name was inherently untrustworthy. "Trustworthiness is a factor other courts have found significant when concluding that the defendant's right to present a defense allowed hearsay evidence to be introduced to the jury." *Herndon*, 246 Mich App at 412 (footnote omitted). The record supports the trial court's exclusion of the assailant's name as inadmissible hearsay was not plain error affecting his substantial rights, *Carines*, 460 Mich at 763, and we affirm Moffit's convictions on this basis.

## V. WAIVER OF COUNSEL AT SENTENCING

Lastly, Moffit argues he is entitled to resentencing because the trial court failed to comply with the basic requirements for waiver at his sentencing hearing. We agree. Moffit "was not required to object to the invalid waiver of the right to counsel . . . ." *People v King*, 512 Mich 1, 17; 999 NW2d 670 (2023). As a result, Moffit's argument is automatically preserved. See *id.*

"When assessing the validity of a defendant's waiver of the right to counsel, [this Court] review[s] de novo the entire record to determine whether the trial court's factual findings regarding the waiver were clearly erroneous." *People v Willing*, 267 Mich App 208, 218; 704 NW2d 472 (2005). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). This Court reviews "de novo the proper interpretation and application of court rules." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018).

"The right to the assistance of counsel at all critical stages of criminal proceedings for an accused facing incarceration is protected by the Sixth Amendment, applicable to the states through the Fourteenth Amendment." *King*, 512 Mich at 11; US Const, Ams VI and XIV. "The right to self-representation is also protected by the Sixth and Fourteenth Amendments." *King*, 512 Mich at 11. Further, "both the right to self-representation and the right to counsel are protected by the Michigan Constitution." *Id.*; Const 1963, art 1, § § 13 and 20. "[S]entencing is a critical stage of a criminal proceeding . . . ." *People v Heller*, 316 Mich App 314, 318; 891 NW2d 541 (2016). As a result, the United States and Michigan Constitutions protect a defendant's right to self-representation at sentencing.

-13-

"Choosing self-representation necessarily requires waiving the right to be represented by counsel." *King*, 512 Mich at 11. A defendant must "give a knowing, voluntary, and intelligent waiver of the right to counsel in order to exercise the right to self-representation." *Id*. (quotation marks and citation omitted). In *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), our Supreme Court established three factors the trial court must consider to establish a valid waiver of counsel: (1) the defendant's request was unequivocal, (2) the defendant asserted his or her right knowingly, intelligently, and voluntarily, and (3) the "defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." MCR 6.005(D) states, the trial court may not accept a waiver without first:

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

The trial court "*must* indulge every reasonable presumption against the waiver of the right to counsel." *People v Russell*, 471 Mich 182, 193; 684 NW2d 745 (2004). A "trial court must substantially comply with" these factors. *King*, 512 Mich at 11. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191 (citation omitted). "[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Id*. at 191-192.

At sentencing, Moffit stated: "At this time, I want to get rid of my attorney . . . ." He added: "I'm going to represent myself. I want her gone." The trial court asked if Moffit was choosing to represent himself. He replied: "Yes. Knowingly, voluntarily, and intelligently, sir." The trial court then engaged in the following colloquy with Moffit: "Sir, do you understand that you have the right to be represented by an attorney at a sentencing hearing?" Moffit replied: "I do." The trial court continued: "Okay. And sir, do you understand that an attorney could potentially apply their experience, their licenses, and try to provide you representation, maybe get you a better result, maybe not, but they could do that?" Moffit answered: "I understand that." The trial court added: "And are you willing to waive that right to have [representation?]" Moffit confirmed he was willing to waive counsel.

The trial court clearly erred because it did not consider the additional factors required under MCR 6.005(D). "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191 (citation omitted). "[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Id*. at 191-192. Critically, the trial court did not advise Moffit of the maximum possible prison sentence, and it did not offer him

an opportunity to consult with counsel about the decision to represent himself. Because the trial court clearly erred, Moffit's waiver of counsel was invalid. Further, "[b]ecause [Moffit's] waiver of his right to counsel was invalid, he was deprived of counsel during significant stages in the proceedings . . . and the error is subject to automatic reversal." *King*, 512 Mich at 17. As a result, we vacate Moffit's sentences.

## VI. CONCLUSION

For the reasons stated, we affirm in part. We affirm Moffit's third-degree fleeing and eluding conviction. But we vacate his sentences due to the defective waiver of counsel. We remand to the trial court for resentencing. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Noah P. Hood